**CHICAGO PNEUMATIC TOOL CO. v. HUGHES TOOL CO. (two cases).**

Nos. 3919, 3947.

United States Court of Appeals
Tenth Circuit.

Feb. 1, 1950.

Rehearing Denied March 11, 1950.

Floyd H. Crews, New York City (Darby & Darby, Harvey W. Mortimer, Raymond G. Mullee, New York City, Bruce McClelland, Oklahoma City, Okl., on the brief), for appellant.

George I. Haight, Chicago, Ill. (Robert F. Campbell, Houston, Tex., Edward A. Haight, Chicago, Ill., Lynn Adams, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

On July 19, 1947, Hughes Tool Company,[1] a Delaware corporation, commenced this action against Chicago Pneumatic Tool Company,[2] a Massachusetts corporation, for alleged infringement of four patents.[3]

Pneumatic (Mass.) filed an answer in which it set up in addition to other defenses, unclean hands and estoppel by laches, predicated on a motion to dismiss a declaratory judgment suit,[4] commenced August 24, 1944, by Pneumatic (Mass.) and Chicago Pneumatic Tool Company,[5] a New Jersey corporation, against Hughes in the District Court of the United States for the District of Delaware, and briefs filed by Hughes in support of such motion. Pneumatic (Mass.) also by a counterclaim, charged infringement by Hughes of six patents issued to Pneumatic (N. J.) and alleged thereafter to have been assigned to Pneumatic (Mass.).

On April 28, 1949, while the instant action was pending, Pneumatic (Mass.) commenced an action for a declaratory judgment against Hughes in the District Court of the United States for the District of

1. Hereinafter called Hughes.

2. Hereinafter called Pneumatic (Mass.).

3. The complaint charged infringement of claims 1, 2 and 3 of Patent No. 1,856,627, May 3, 1932; claims 1, 2 and 3 of Patent No. 1,983,316, December 4, 1934; claims 1, 2 and 3 of Patent No. 2,011,084, August 13, 1935, and claims 4, 6, 8, 12, 13, 14 and 15 of Patent No. 2,030,442, February 11, 1936. The patents were issued to Hughes Tool Company, a Texas corporation, and were thereafter assigned to Hughes Tool Company, a Delaware corporation, appellee in the instant case.

4. Hereinafter referred to as the 1944 Delaware case.

5. Chicago Pneumatic Tool Company, the New Jersey corporation, is the parent corporation of Pneumatic (Mass.). The former will hereinafter be referred to as Pneumatic (N.J.).

Delaware, asking an adjudication that Pneumatic (Mass.) had not infringed by the sale or lease of its Type G, K or E rotary bits, used in drilling for oil and gas, any unexpired patent or patents owned or controlled by Hughes, and, specifically, patents numbered 1,856,627; 1,983,316; 2,011,084 and 2,030,442, and adjudging that none of the claims in any of such numbered patents is valid if given a construction sufficiently broad to bring within them any of such Type G, K or E bits.

On May 6, 1949, the trial court entered an order in the instant action enjoining Pneumatic (Mass.) from prosecuting such declaratory judgment suit, "or any other action involving the same subject matter," until the final determination of the instant action. Pneumatic (Mass.) has appealed from such injunctive order and an order refusing to eliminate therefrom the language above quoted.

The instant action has now been tried and submitted on oral argument and written briefs.

Since 1934, Pneumatic (N. J.) has made and Pneumatic (Mass.) has marketed rock bits of the three-cone type. The first was known as Type G. Later, Type K was put on the market and the manufacture of Type G was discontinued. Later, Type E was put on the market and the manufacture of Type K was discontinued. In 1933, Hughes commenced a suit against Pneumatic (Mass.) for alleged infringement of Patent No. 1,647,753, issued November 1, 1927, known as the Scott and Wellensiek Patent. That suit resulted in a decree on July 27, 1937, adjudging validity and infringement and ordering an accounting. That decree was affirmed by this court July 1, 1938.[6]

The complaint in the 1944 Delaware case, which was commenced while the accounting above-mentioned was pending, contained three counts. The first count charged a violation of the anti-trust laws and prayed for an injunction restraining Hughes from claiming any benefit under the 1937 decree. The second count charged that the accounting proceeding was still pending and prayed for an injunction restraining Hughes from proceeding further in the accounting suit. The third count alleged that Hughes then owned and held a large number of unexpired patents relating to rotary drills, all late comers in a crowded art, among which were:

| 1,647,753 | Scott and Wellensiek | Nov. | 1, 1927 |
| 1,856,627 | Fletcher | May | 3, 1932 |
| 1,905,079 | Wellensiek and Smith | Apr. | 25, 1933 |
| 1,918,902 | Fletcher and Kuldell | July | 18, 1933 |
| 1,983,283 | Garfield | Dec. | 4, 1934 |
| 1,983,316 | Scott and Garfield | Dec. | 4, 1934 |
| 1,993,286 | Scott | Mar. | 5, 1935 |
| 2,011,084 | Scott | Aug. | 13, 1935 |
| 2,030,442 | Garfield and Scott | Feb. | 11, 1936 |
| 2,038,387 | Scott | Apr. | 21, 1936 |
| 2,294,544 | Garfield | Sept. | 1, 1942 |

that in April, 1935, Hughes notified Pneumatic (N. J.) and Pneumatic (Mass.) that they were infringing Patent No. 1,983,316 and Patent No. 1,983,283; that in January, 1939, Hughes notified Pneumatic (N. J.) and Pneumatic (Mass.) that they were infringing Patents 1,983,316 and 1,856,627, and that in the latter part of 1942, an omnibus charge was made by Hughes that Pneumatic (Mass.) was infringing its patents additional to Patent No. 1,647,753; that Pneumatic (N. J.) made, and it and Pneumatic (Mass.) sold, a three-cone type bit, known as Type G, from 1934 to July, 1938; a three-cone type bit, known as Type K, from July, 1938, to the latter part of 1942, and from the latter part of 1942, a three-cone type bit, known as Type E; that the sales of Type E since 1942 were made to the United States, except a few sets which were sold in the early part of 1942 to private purchasers. They prayed for a declaratory judgment adjudging that none of the bits G, K and E infringed any patent owned or controlled by Hughes and, specifically, any of the enumerated patents, and adjudging that none of such patents were valid if given a construction sufficiently broad to bring bits G, K and E within the claims thereof.

Hughes interposed motions to dismiss the three counts. The trial court sustained the motions and entered its judgment dismissing the action. Pneumatic (N. J.) and Pneumatic (Mass.) appealed from the judg-

---

6. See Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 97 F.2d 945.

ment in so far as it dismissed count three. The judgment was affirmed by the Court of Appeals for the Third Circuit on the opinion of the trial court.[7] The trial court held in the 1944 Delaware case that count three failed to allege an actual present controversy. It held that under the allegations of the complaint, Pneumatic (N. J.) and Pneumatic (Mass.) had not made Type G and Type K bits since 1942, and that relief with respect to Type E bits could only be had against the United States in the Court of Claims by virtue of 35 U.S.C.A. §§ 68 [now 28, U.S.C.A. § 1498], 94. It further held that the 1942 notice was not a charge of infringement, but was merely "an incident" in the Tenth Circuit proceedings, contained in a letter of Hughes to Counsel for Pneumatic (Mass.) looking toward a settlement.

It is patent from the opinion of Judge Leahy in the 1944 Delaware case, that he dismissed count three upon the allegations thereof and not upon extraneous facts.

In its brief in the 1944 Delaware case, Hughes said:

"In order to make the alleged fear seem more real plaintiffs allege it as coming from three sources. First, plaintiffs say that six and ten years ago defendant alleged infringement of three patents by structures long since discontinued and that the charge might be made now. This, at the very most shows that there was once a controversy which, but for plaintiff's present attempted resurrection, would have remained dead and buried. It is still dead, apparently having died with discontinuance of plaintiff's manufacture and sale.

"As to the three patents as to which notices of infringement were sent, the structures which evoked the notices have been discontinued. As to any other patents, plaintiffs are clearly trying to use a procedure enacted to clarify controversies to create controversies."

After the instant suit was instituted, Pneumatic (Mass.) filed interrogatories. Interrogatories 3 and 4 with the answers thereto are set out in marginal note.[8]

At the time Hughes filed its brief in the 1944 Delaware case, Pneumatic (N. J.) and Pneumatic (Mass.), under the allegations of the complaint, had ceased to make bits Types G and K in 1942 and one infringement notice was six years old and one was ten years old. The substance of the statement in the Hughes brief was that there was no existing controversy because Pneumatic (N. J.) and Pneumatic (Mass.) had ceased to make and sell the bits G and K and one infringement notice was six years old and one was ten years old. It was not a renunciation as to future infringement and was not a statement that a controversy would not arise if manufacture and sale of bits G and K should thereafter be resumed.

7. See Chicago Pneumatic Tool Co. v. Hughes Tool Co., D.C., 61 F.Supp. 767, and Chicago Pneumatic Tool Co. v. Hughes Tool Co., 3 Cir., 156 F.2d 981.

8. "3. As to each of the defendant's drill bits, (a) Type G, three-cone bit; (b) Type K three-cone bit; (c) Type E three-cone bit; (d) Type C-1 reaming bit; and (e) Type B reamer, state whether or not it is covered, or is intended to be, by the infringement charge of paragraph VII of the Complaint.

"4. As to each type of bit identified in paragraph 3 hereof which plaintiff asserts to be infringing, within the purview of paragraph VII of the Complaint, identify each and every patent, or patents, which is, or are, asserted by plaintiff to be infringed by the selling thereof."

Interrogatory No. 3: Defendant's drill bits Types G and K are not charged to infringe insofar as patent No. 1,983,316 is concerned. The plaintiff is without knowledge as to whether bits of either of these types have been so constructed as to infringe either patent No. 2,011,084 or 2,030,442. Defendant's Type E three-cone bits are charged to infringe. Defendant's Types B and K three-cone bits are charged to infringe Patent No. 1,856,627. Defendant's Type C-1 reaming bit and Type B reamer are not covered or intended to be covered by the charge of infringement.

"Interrogatory No. 4: Each of the patents in suit is infringed by the selling of defendant's Type E bits. Plaintiff is not informed as to whether defendant's Types G and K bits have been so constructed as to infringe patents Nos. 2,011,084 or 2,030,442."

The answers to the interrogatories were to protect Hughes in the event there had been a resumption of the manufacture and sale of bits G and K. At the trial of the instant case, Hughes, having learned that the manufacture and sale of bits G and K had not been resumed, offered no evidence with respect to such bits and asserted no claim with respect to infringement thereof in 1944, or prior thereto, and it sought relief only with respect to Type E bits.

In its brief in the Court of Appeals for the Third Circuit, filed in 1946, Hughes stated: "In considering whether, in its discretion, the court should hear this case on the merits, the court may consider the fact that there is no existing controversy as to any present device. The Court may properly in its discretion, decline to act where the issues are dead (Borchard on Declaratory Judgments, Second Edition, p. 86). Petitioner's allegations upon which reliance is based to show controversy, are plainly strainings for excuses for bringing a lawsuit and not sound reasons for action. Petitioners are not now engaged in activity which is accruing potential damages such as can be adjudicated in the Court. If there is ever to be an adjudication as to the alleged sales to the government, it must be in the Court of Claims, U.S.Code, Title 35, Sections 68, 94."

Hughes knew at the time it filed such brief that Pneumatic (N. J.) and Pneumatic (Mass.) were then selling Type E bits to private purchasers, but no supplemental complaint had been filed and while Hughes' statements were in the present tense, there could be no doubt they were directed to the situation, as disclosed by the allegations in count three, existing at the time the motion to dismiss count three was heard and disposed of in the United States District Court for the District of Delaware. The last sentence of the quoted portion of such brief shows clearly that the argument was predicated on the proposition that, since sales of Type E bits, at the time the motion to dismiss was heard and disposed of,

were being made only to the United States, the sole remedy of Hughes was a suit against the United States in the Court of Claims.

We find nothing in the record to support a charge of deception or misrepresentation. There may have been a renunciation as to infringements prior to 1944 of bits G and K, but since, in the instant suit, no charge of infringement of those bits is any longer involved, that issue is non-existent.

A Federal District Court which first obtains jurisdiction of parties and issues may preserve its jurisdiction by enjoining proceedings involving the same issues and parties, begun thereafter in another Federal District Court.[9]

With respect to the provision in the decree, "or any other action involving the same subject matter," we think that clearly means any other suit involving the same parties and issues as those involved in the instant case and we regard such restraint not improper.

Affirmed.

9. Crosley Corporation v. Hazeltine Corporation, 3 Cir., 122 F.2d 925; Crosley Corporation v. Westinghouse Elec. & Mfg. Co., 3 Cir., 130 F.2d 474; F. X. Hooper Co. v. Samuel M. Langston Co., D.C.N.J., 56 F.Supp. 577–584 and cases there cited.