**TELEDYNE RYAN AERONAUTICAL COMPANY, doing business as Aqua Tec Corporation, Fort Collins, Colorado, a Corporation of California, Plaintiff,**

v.

**MONTGOMERY WARD & CO., Incorporated, et al., Defendants.**

**Civ. A. No. C–2405.**

United States District Court, D. Colorado.

April 29, 1971.

Drake & Crandell, by Ralph F. Crandell, Denver, Colo., Woodcock, Washburn, Kurtz & Mackiewicz, by Virgil E. Woodcock, Philadelphia, Pa., for plaintiff.

Walberg & Pryor, by John E. Walberg, Denver, Colo., for defendant, Montgomery Ward & Co., Inc.

Davis, Graham & Stubbs, by Robert H. Harry, Denver, Colo., George R. Clark, and Mason, Kolehmainen, Rathburn & Wyss, by Walter E. Wyss, Chicago, Ill., for defendants, Sunbeam Corporation, Sunbeam Appliance Service Co. and Northern Electric Co.

## MEMORANDUM OPINION

WINNER, District Judge.

Plaintiff, Teledyne, initially filed a five count complaint against the single defendant, Montgomery Ward & Co. One Count of that complaint claimed patent infringement of a patent of an oral hygiene apparatus. This patent is commonly referred to as the Mattingly patent. Thereafter, Northern Electric Company filed a declaratory judgment action in California against Teledyne Industries, Inc., seeking to have the Mattingly patent declared to be invalid. Some two weeks later, Teledyne filed an amended complaint claiming patent infringement of the Mattingly patent and joining as defendants Sunbeam Corporation, Sunbeam Appliance Service Company, and Northern Electric Company. No question has been raised by defendants, Montgomery Ward and Sunbeam Appliance Service Company, as to this Court's jurisdiction, nor as to the propriety of the venue of the action, insofar as they are concerned. However, Sunbeam Corporation and Northern Electric Company have filed motions to dismiss

asserting in the alternative that service of process was not properly accomplished as to them, and that the venue of the action is wrong as to them. In the meantime, the California action has been stayed pending a determination by this Court of the jurisdictional and venue questions which have been raised by defendants, Sunbeam Corporation and Northern Electric Company.

Plaintiff has engaged in extensive discovery in an effort to establish that the Court has jurisdiction and that the venue of the action is proper. The parties have filed exhaustive and excellent briefs. Those briefs, coupled with the Exhibits attached to them, and with the excerpted portions of the depositions which the Court has reviewed and considered, amount to more than 1,000 pages. The matter was then fully argued by the parties.

Two Federal statutes are of controlling importance here, and Rule 4 of the Federal Rules of Civil Procedure, together with the Colorado long arm statute are of collateral interest. The general venue statute, 28 U.S.C. § 1391(c), provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as residence of such corporation for venue purposes."

The special venue statute having to do with suits brought for patent infringement, 28 U.S.C. § 1400(b), provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Rule 4(e) provides in material part:

" * * * whenever a statute or rule of court of the state in which the district is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

C.R.S. '63, 37–1–26, provides:

"(1) (a) Engaging in any act enumerated in this section by any person, whether or not a resident of the State of Colorado, either in person or by an agent, submits such person * * * to the jurisdiction of the courts of this state, concerning any cause of action arising from: * * * .

(b) the transaction of any business within this state."

In considering the motions before the Court, it is important to bear in mind the various company names which are involved. They are:

1) *Sunbeam Corporation*, a Delaware corporation. This is the parent company and, insofar as the facts here involved are concerned, it is the company having the primary sales responsibility for the device in question.

2) *Sunbeam Appliance Company*. This is not a separate corporation. It is, instead, a division of Sunbeam Corporation, and within that corporation it manages the sales of appliances distributed by Sunbeam Corporation.

3) *Sunbeam Appliance Service Company*. This is a separate Delaware corporation, wholly owned by Sunbeam Corporation. In Sunbeam's financial statements, the activities of Sunbeam Appliance Service Company are reported in a consolidated statement in accordance with usual accounting and tax procedures. This company was organized to service Sunbeam appliances and it presently sells certain appliances, most particularly appliances which are sold under the trade name "Vista Line."

4) *Northern Electric Company*, a Delaware corporation. This is a wholly owned subsidiary of Sunbeam Corporation, and its activities are reported in the consolidated financial statements of Sunbeam. It is the manufacturer of the oral hygiene appliances with which we are here concerned.

Sunbeam Appliance Service Company maintains a place of business in Colora-

do. Its statutory agent for service of process is The Corporation Company, with an office in Denver, Colorado. Neither Sunbeam Corporation nor Northern Electric Company have appointed a statutory agent for service of process, and service was here attempted on Sunbeam Corporation and Northern Electric Company by serving The Corporation Company under a claim that Sunbeam Appliance Service Company is an agent of Sunbeam Corporation; and, presumably, of Northern Electric Company. The sufficiency of this service has been challenged by Sunbeam Corporation and Northern Electric Company, and, additionally, Colorado venue has been challenged.

At the outset, the Court is confronted with the unusual situation that two Federal District Courts have reached diametrically opposed views on the exact question here presented as to Sunbeam Corporation. Unfortunately, the facts on which those decisions are based are not set forth in the opinions, and, for that reason, it is difficult to say anything more concerning those cases other than that they reach opposite results.[1] In Tweedale v. Sunbeam Corporation (an unreported decision), Judge Picard held that Sunbeam Appliance Service Company was the alter ego of the Sunbeam Corporation and he upheld jurisdiction and venue on facts which may or may not have been quite similar to those presently before the Court. Sunbeam sought mandamus asking that the United States Court of Appeals for the Sixth Circuit compel Judge Picard to dismiss the case pending before him. This the Sixth Circuit refused to do, but it did not pass upon the correctness of the lower court's ruling. In Sunbeam Corporation v. Picard, 227 F.2d 596, it was said:

"The District Judge, in response (to an order to show cause) makes detailed findings of fact, showing multitudinous activities of the subsidiary on behalf of its parent, the overlapping of the officers and directors of the two corporations and the response by the subsidiary to the guaranty obligations of its parent, from which he concludes that Sasco is actually Sunbeam itself, or, at least, an agent thereof, so that service of process on the subsidiary amounts to service on Sunbeam and that the Court should, in the circumstances detailed, ignore the separate corporation identities and retain jurisdiction. * * * Since the District Court's refusal to surrender jurisdiction may be reviewed upon an appeal taken from a final judgment, we conclude that notwithstanding the inconvenience, delay and expense to the litigants, without denying our power to issue the writ, that this is not an appropriate situation for its exercise."

The Sixth Circuit then commented that the parties might be well advised to transfer the case to the Northern District of Illinois where there was no question as to jurisdiction or venue, but the Court said that it had no power to compel that procedure. Thereafter, the case was tried and on the merits it was decided in favor of Sunbeam. Tweedale v. Sunbeam Corporation, D.C., 145 F.Supp. 97. Accordingly, the Sixth Circuit never did pass upon the correctness or incorrectness of Judge Picard's ruling.

More recently, Judge Lieb held that his court had neither jurisdiction, nor venue, insofar as Sunbeam Corporation was concerned. His ruling appears in Franzus Industries, Inc. v. John Oster Manufacturing Corp. et al., No. 70-12-Civ. T., in the United States District Court for the Middle District of Florida, Tampa Division. Again, the opinion is not reported. Judge Lieb's order does not recite the facts on which he acted, and the factual comparability to the record here is uncertain.

Plaintiff here lists some 52 "facts" which it says establish jurisdiction and venue as to Sunbeam, and plaintiff says

---

1. Counsel have provided the Court with copies of briefs filed in the cases and with somewhat contradictory statements as to the facts involved.

that there are 12 "facts" establishing jurisdiction and venue as to Northern Electric Company. Plaintiff says that no single fact is sufficient to confer jurisdiction or venue, but that taken together, they establish that Sunbeam Corporation is the alter ego of Sunbeam Appliance Service Company.

Many of plaintiff's "facts" are disputed by defendants and it is not the Court's intent to make separate findings as to each of the 64 contentions made by plaintiff. Rather, only a general summarization will be given, and many of the "facts" will be lumped together.

Plaintiff has established that Sunbeam Appliance Service Company (hereinafter called Sasco) is a wholly owned subsidiary of Sunbeam Corporation, and that the offices of the two companies in Chicago are in close physical proximity to each other. Undeniably there is also a close working relationship between the companies, and consolidated financial statements are filed for them as well as for the other subsidiaries of Sunbeam Corporation. The corporations use the common trade mark of Sunbeam under, at best, an oral license, and Sasco provides service facilities and warranty service for Sunbeam products. However, Sasco is paid by Sunbeam for the work it performs, and the warranty service it funishes and the use of the Sunbeam trade mark do not differ in major degree from services provided by independent automobile dealers servicing new automobiles manufactured by the company from which they hold a dealer-franchise. In fact, apart from the distinction that Sasco is a wholly owned subsidiary, while most automobile dealers are independent, there is great similarity between the functions of Sasco and those of independent automobile dealers. For example, merchandise found to be defective within the guarantee period is repaired by Sasco without charge to the customer, but Sasco is then reimbursed by Sunbeam for the necessary parts and labor. Under certain circumstances, receipts are issued by Sasco showing that the traded-in merchandise was received "on behalf of Sunbeam" and saying that Sunbeam will issue a credit. However, the record establishes that full accounting records between the two corporations are maintained as is the case when Sunbeam salesmen turn in shop worn samples through the Sasco facilities. On occasion, Sasco makes "policy adjustments" at the direction of Sunbeam salesmen and Sasco cooperates with Sunbeam in a quality control program; but, again, appropriate charges are made by Sasco to Sunbeam. Sunbeam assists Sasco in furnishing credit information, but in this field it operates much as would a credit reporting agency such as Dun and Bradstreet, and Sunbeam is paid for its credit reporting service by Sasco. Each company maintains a suggestion program and a pension plan, and Sasco sells Sunbeam products to Sunbeam employees at a discount. Plaintiff asserts that Sasco management personnel can participate in a Sunbeam stock option plan, and in Sunbeam retirement plans, but the record does not support the claim that Sasco employees can participate in the Sunbeam Corporation retirement plan. It is true that there is an overlap of directors among Sunbeam, Sasco, and Northern Electric Company, but the overlap is far from complete, and it cannot be said that Sunbeam directors dominate the other boards. Although one witness testified that Sasco is "within Sunbeam Appliance Company," this testimony was apparently inaccurate and was corrected before the deposition was signed. In any event, the record does not establish that Sasco is anything other than a separate corporation. The fact that the same lawyers represent all three companies is given no weight by the Court in its evaluation of plaintiff's contentions.

Sunbeam employs two full time salesmen who use their Colorado homes as their headquarters and who actively conduct Sunbeam's business in Colorado. These salesmen have some contact with Sasco, but the amount of contact does not appear to be great. Plaintiff argues

that the activities of Sunbeam Appliance Division are co-extensive with those of Sasco, but the record does not support this contention. The Vista Line is sold through Sasco, and plaintiff argues that Reardon, a Colorado salesman, testified that he handles this line in the same way he handles the Sunbeam line. An examination of his testimony leads to the conclusion that it is only by a strained reading that his testimony can be so interpreted.

In various telephone listings in the classified directories, the Sunbeam script trade mark is used in the advertising, but only a listing for Sasco is shown. The Colorado Sunbeam sales representatives did participate in a trade show displaying and promoting the Vista Line, (although they were separately paid by Sasco for so doing) and it seems that Sunbeam sales representatives have the right to approve or disapprove a Vista Line distributor or retail outlet. It is not denied by Sunbeam that their sales representatives clear their overstocked sample accounts through Sasco, but, again, the accounting procedures between the companies are meticulous. The record shows that Sasco has sold no more than six of the allegedly infringing devices in Colorado, but there is nothing to show that it was not acting for itself in making those sales. Finally, Sunbeam does provide its Colorado sales representatives with leased automobiles for use on their territory.

Plaintiff then enumerates its contentions with reference to Northern Electric Company, and, suffice it to say that plaintiff's contentions concerning it are more limited than are its arguments as to Sunbeam. Essentially, plaintiff says that if jurisdiction and venue are proper as to Sunbeam, jurisdiction and venue should be upheld as to Northern because it is a wholly owned subsidiary. In other words, plaintiff almost concedes that jurisdiction and venue as to Northern ride on the coattails of Sunbeam.

Without considering the uncertain impact of United States v. Scophony Corporation of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, on Cannon Manufacturing Company v. Cudahy Packing Company, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, the Court is not prepared to hold that mere maintenance of an office by a wholly owned subsidiary is sufficient to subject a parent corporation to the jurisdiction of the state where a subsidiary maintains such an office. However, if the questions here involved were to be determined under 28 U.S.C. § 1391(c), where the test is "doing business" it seems abundantly clear that Sunbeam Corporation is doing business in Colorado under the tests applied in Curtis Publishing Company v. Cassel (10 Cir.), 302 F.2d 132; Steinway v. Majestic Amusement Company (10 Cir.), 179 F.2d 681; Intermountain Ford Tractor Sales Company v. Massey-Ferguson, Ltd. (D.C.Utah), 210 F. Supp. 930, aff'd (10 Cir.), 325 F.2d 713, and Flank Oil Co. v. Continental Oil Co. (D.C.Colo.), 277 F.Supp. 357. In fact, Sunbeam's counsel conceded this on oral argument. But, here the test of venue is not that of "doing business."

Instead, the test of venue in a patent infringement suit is that set forth in 28 U.S.C. § 1400(b), which, as has been noted, permits suit only, (1) in the district where the defendant resides, or (2) "where the defendant has committed acts of infringement *and has a regular and established place of business.*" This quoted phrase is much more limited in its meaning than is the phrase "doing business" and it has been so interpreted by the Courts. Any argument that 28 U.S.C. § 1400(b) can be expanded to permit venue of a patent infringement suit under the general venue statute is completely destroyed by Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786, where the Supreme Court said:

"We hold that 28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391."

The 1957 decision of the Supreme Court in Fourco Glass Co. was emphasized four years later in Schnell v. Peter Eckrich & Sons, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546, where the Court said:

"The requirement of venue [under 28 U.S.C. § 1400(b)] is specific and unambiguous; it is not one of those vague principles, which, in the interest of some overriding policy, is to be given a 'liberal' construction."

In Ruth v. Eagle-Picher Company (10 Cir.), 225 F.2d 572, Chief Judge Phillips discussed at some length the history of the patent venue statute, and in affirming a decision by Judge Breitenstein, it was said:

"We conclude that it was not intended that § 1400 should be modified or complemented by § 1391(c); that § 1400 is the sole provision governing venue in patent cases; and that a corporate defendant may be sued only in a district of the state in which it is incorporated or a district wherein it has committed acts of infringement and has a regular and established place of business."

A recent but already frequently cited case is Scaramucci v. F. M. C. Corporation (D.C.W.D.Okl.), 258 F.Supp. 598. In that case, Judge Daugherty held that the requirements of 28 U.S.C. § 1400(b) were not met. There the alleged infringing device was a valve, and it was shown that the defendant, a Delaware corporation, manufactured the valve in Texas; that defendant had a sales representative in the Western District of Oklahoma, who worked out of his home, and used a business card showing him to be a sales representative of defendant. The card showed both his home address and the address and telephone number of the defendant in Houston. It was further proven in that case that the sales representative made calls on customers within the district and that the defendant had in fact appointed an agent for service of process in Oklahoma. Finally, it was demonstrated that the defendant maintained another division (not a separate corporation) in Oklahoma and that that division did have a regular and established place of business. Manifestly, the proof in Scaramucci that one corporation was the alter ego of the other was stronger than it is here. Judge Daugherty found on the facts that the defendant had committed an act of infringement in the district, but he held that venue was improper because the defendant did not maintain a regular and established place of business within the district. In Scaramucci it is said:

"However, with reference to the other requirement that the defendant has 'a regular and established place of business' in this judicial district, the Court finds and concludes that the defendant does not have a regular and established place of business in this judicial district within the intent, purpose, and meaning of 28 U.S.C. § 1400(b). The facts of having a service agent and being licensed to do business in Oklahoma are not controlling and will not satisfy the requirement. (citations omitted) Nor may the familiar test of 'doing business' be substituted for the test of a 'regular and established place of business.' Knapp-Monarch Co. v. Casco Products Corp. et al., 342 F.2d 622 (7 Cir.) cert. denied 382 U.S. 828 [86 S.Ct. 64, 15 L.Ed.2d 73].

"The activities of the sales representative of defendant as outlined above fall far short of constituting or creating a 'regular and established place of business' in this judicial district of the defendant within the meaning, purpose, and intent of said statute. (citations omitted) As to the OCT division and its office in this judicial district the question is more difficult. At first blush this could seem to satisfy the venue statute. But this is a special patent venue statute and a consideration of the history of patent venue, this statute, its predecessor statute, and the apparent purpose and intent of the present statute, leads the

court to the conclusion that this requirement is lacking in this case, notwithstanding the defendant has another Division with a regular and established place of business in this judicial district. The former patent value statute allowed suit wherever the offender could be served. The present statute was intended to narrow and restrict this venue. * * * It is therefore concluded that for the special purpose of patent infringement venue, the OCT Division office of the defendant in this judicial district, which Division and office has absolutely nothing to do with the accused valve or its manufacture, sale, service or distribution here or any where else, will not satisfy the requirement of said special patent venue statute that the defendant have 'a regular and established place of business' in this judicial district. * * *

"Accordingly, the defendant's Motion to Dismiss for lack of venue is well taken and this suit must be dismissed, or, by the authority of 28 U.S.C. § 1406(a) be transferred to the United States District Court for the Southern District of Texas, Houston Division."

■ It would unduly extend this opinion to quote from other decisions, but to the same effect are Amperex Electronic Corporation v. Perry, 168 U.S. P. 2. 615; Jeffrey Galion, Inc. v. Joy Manufacturing Company, D.C., 323 F. Supp. 261; American Cyanamid Company v. Nopco Chemical Company (4 Cir.), 388 F.2d 818; and Grantham v. Challenge-Cook Bros., Incorporated (7 Cir.), 420 F.2d 1182. It is true that if the facts here established that Sunbeam Corporation were in fact the alter ego of Sunbeam Appliance Service Company, the requirements of the patent venue statute would be met. However, Sasco is no more the alter ego of Sunbeam than was Schick Service, Inc. the alter ego of Schick Electric, Inc. in Faberge, Inc. v. Schick Electric, Inc. (D.C.Del.), 312 F. Supp. 559, and the Court expressly finds that on a consideration of all the facts plaintiff has failed to establish that Sunbeam Corporation is the alter ego of Sunbeam Appliance Service Company. While Sasco may act as agent for Sunbeam Corporation in some isolated instances, that agency is very limited, and the separate corporate identities of the corporations have been maintained. Plaintiff has the burden of proof as to venue, and plaintiff has not met that burden.

Accordingly, the Court finds and concludes that venue does not lie in the District of Colorado insofar as Sunbeam Corporation is concerned. That being true, and with what has already been said concerning plaintiff's position as to Northern Electric Company, the Court finds that Northern Electric Company has no regularly established place of business in Colorado, and concludes that venue in the District of Colorado is equally improper as to Northern Electric Company.

■ Additionally, the Court finds and concludes that it is without jurisdiction over Sunbeam Corporation or Northern Electric Company for the reason that there was not proper service of process on either of these defendants. Service was had only upon the statutory agent for Sunbeam Appliance Service Company. Therefore, with the findings and conclusions of the Court as to the status and relationships of the corporations, it must follow that service was not sufficient to acquire jurisdiction over either Sunbeam Corporation or Northern Electric Company.

If the action were one in which venue could rest upon the provisions of 28 U.S.C. § 1391(c), jurisdiction could presumably be obtained under the provisions of Rule 4(e) and C.R.S. '63, 37–1–26. However, for completely understandable reasons, no attempt was made by plaintiff to obtain service under that section, and no consideration need be given to this jurisdictional question, because, as has been noted, § 1391(c) is of no assistance to plaintiff here. In other words, even if jurisdiction were

obtained under the Colorado long arm statute, venue would not lie.

There remains for determination the disposition to be made of the case as to Sasco and Montgomery Ward, the defendants over whom the Court does have jurisdiction and as to whom the venue is proper.

It is ordered that insofar as the surviving defendants, Montgomery Ward & Co. and Sunbeam Appliance Service Company, are concerned, all matters will be stayed (subject to further order of this Court) pending a decision by the United States District Court for the Central District of California in Civil Action No. 70–2003–H in that Court, Northern Electric Company v. Teledyne Industries, Inc. on the motion of Teledyne to transfer that case to this Court, or pending appeal of the present order of this Court within the time allowed for appeal.

Pursuant to the provisions of Rule 54(b) the Court directs the entry of final judgment of dismissal as to defendants, Sunbeam Corporation and Northern Electric Company, for want of jurisdiction and for lack of proper venue and the Court expressly determines that there is no just reason for delay in the entry of such judgment.