**PENNTUBE PLASTICS COMPANY,**
Plaintiff,

v.

**FLUOROTEX, INC. and Fluorodynamics,**
**Inc., Defendants.**

**Civ. A. No. 71–483.**

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 17, 1971.

Thomas A. Evins, Spartanburg, S. C., David H. Pfeffer, New York City, for plaintiff.

Robert A. Clay, Greenville, S. C., Fritz L. Schweitzer, Jr., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

BLATT, District Judge.

This is a patent infringement action brought by the plaintiff Penntube, a Delaware corporation, against Fluorodynamics, Inc., also a Delaware corporation, and its subsidiary, Fluorotex, Inc., a purported South Carolina corporation. Subsequent to the commencement of this action, Fluorodynamics brought a declaratory judgment action in the District of Delaware against the plaintiff, alleging invalidity of the patent asserted in this action. Fluorotex is not a party to the Delaware action.

The plaintiff's patent, No. 3,265,092 (and the reissue thereof, No. Re 27,028) relates to heat-shrinkable tubing of a material known as FEP Teflon.

The Delaware defendant, Fluorodynamics, has moved for dismissal under 28 U.S.C. § 1400(b) for improper venue and has additionally moved for quash of service. Both defendants have moved for transfer under 28 U.S.C. § 1404(a) to the District of Delaware.

Plaintiff, in turn, has moved for an order restraining Fluorodynamics from prosecuting the Delaware action. In addition, without actually moving for default judgment, plaintiff has suggested that the defendants are in default for failure to file a timely response to the complaint herein.

The following shall constitute the findings of fact and the conclusions made by the Court in determining the various matters before it.

## DEFAULT

Plaintiff resorted to statutory service procedures against both defendants. It was unable to effect an actual service of papers upon Fluorodynamics, because it has no office, as such, within the District. As to Fluorotex, it had forfeited its corporate charter in January 1971, prior to commencement of this action. The statutory service procedure followed by plaintiff required service upon the Secretary of State of South Carolina, mailing of the summons and complaint by the Secretary of State to the defendants at their respective last known addresses, and filing of registered mail receipts. I find that these procedures, while not precisely followed, were substantially complied with. On the other hand, defendants claim never to have been actually served, through the mail, or otherwise, with a copy of the summons and complaint, and counsel for defendants stated at the hearing on these motions that defendants learned of the action only indirectly and sent an agent to the Court to purchase a copy of the complaint. In this connection, it appeared that the papers mailed to Fluorodynamics were inadvertently mailed to the wrong city by the Secretary of State. It is not clear what happened to the papers mailed to Fluorotex, although that defendant claimed never to have received them and, indeed, no return receipt for them is on file.

 Under all the circumstances, the Court holds that the statutory service procedures were sufficiently observed to give this Court jurisdiction over both parties. At the same time and as an integral part of the previous ruling, the Court will treat the defendants' objections to service as, in effect, a motion under Rule 6(b) for enlargement of time. Since the defendants did not have actual knowledge of a purported service of process, any failure to file a timely response is excusable. Defendants have evidenced an intent to vigorously defend the issues presented by this action. Default would not be appropriate and, indeed, plaintiff referred to it only by innuendo and not by motion under Rule 55.

The motion to quash service upon Fluorodynamics will be denied.

Defendants shall have twenty (20) days from the date of this order in which to answer the complaint herein.

## MOTION TO DISMISS FOR IMPROPER VENUE

Defendant Fluorodynamics, appearing specially, contested venue in this case by way of a motion to dismiss based on 28 U.S.C. § 1400(b), a special statute covering venue in patent infringement cases. Section 1400(b) provides that:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

It is the sole and exclusive provision controlling venue in patent infringement actions. Fourco Glass Company v. Transmirra Products Corporation et al., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786. See also Dow Chemical Co. v. Metlon Corp. et al., 4th Cir. 1960, 281 F.2d 292.

Fluorodynamics, a Delaware corporation, is not a corporate "resident" of South Carolina, so that the first alternative of § 1400(b) obviously does not apply. The second alternative of § 1400(b) requires that the defendant have committed acts of infringement *and* that the defendant have a *regular and established* place of business in the District. Absent "residence", *both* conditions of the second alternative must be satisfied before venue is properly laid in this District.

In the case of Schnell et al. v. Peter Eckrich & Sons, Inc., et al., 1961, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546, the Supreme Court said, with reference to Section 1400(b),

"The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."

It is not contested by defendants that products alleged to infringe are sold in this District, so the controlling issue is whether Fluorodynamics has a "regular and established" place of business in South Carolina. It is plaintiff's position that the Fluorotex subsidiary is nothing more than a local sales office of Fluorodynamics.

Fluorodynamics relies heavily upon Manville Boiler Co., Inc. v. Columbia Boiler Co., 4th Cir. 1959, 269 F.2d 600, cert. den. 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156, as authority for the proposition that a separate subsidiary corporation is not a place of business of the parent. Many facts were brought out, through affidavits and by deposition testimony of Frank Bennett, the former president of Fluorotex. The controlling facts are as follows:

Fluorodynamics manufactures the accused product in Newark, Delaware and sells it directly and through other parties, including Fluorotex.

Fluorotex was incorporated in South Carolina in 1967, with an office in Greenville, S. C. All the stock of Fluorotex is owned by Fluorodynamics. Fluorotex was formed for the limited purpose of selling products of Fluorodynamics to the textile industry, and its activities were in fact restricted to selling products of Fluorodynamics. At the time of commencement of this suit, Fluorotex had only one full time employee.

Although Fluorotex initially at least, may have had a separate corporate identity, it became less and less distinct with the passage of time. Originally, Fluorotex had a separate bank account, but since 1968 all its bills have been paid by Fluorodynamics. Likewise, at the outset, Fluorotex was invoiced for products purchased from Fluorodynamics, but that practice was discontinued prior to commencement of the present action and the purchases and sales of Fluorotex were settled by bookkeeping entries made at the Newark, Delaware offices of Fluorodynamics.

All orders taken by Fluorotex were submitted to Fluorodynamics for approval. Shipment and invoicing of Fluorotex sales were handled by Fluorodynamics personnel in Delaware, and checks received by Fluorotex in payment were transmitted uncashed to the Fluorodynamics office in Delaware. All sales brochures, samples, and price lists used by Fluorotex were supplied by Fluorodynamics. At least some of the sales literature, and even Fluorotex invoices, described Fluorotex as a "division of Fluorodynamics, Inc."

Frank Bennett, Fluorotex's President, regularly submitted sales call reports to Mr. Shoffner in Wilmington, addressing him as President of Fluorodynamics. Shoffner was the chief executive of Fluorodynamics, and also was Chairman of Fluorotex. As such, he had ultimate responsibility for the acts of both Fluorotex and Fluorodynamics. Bennett also assisted directly in Fluorodynamics' sales efforts by traveling with Fluorodynamics salesmen, and took instructions from Mr. Connolly, a Fluorodynamics' marketing official.

All the expenses of operating the Fluorotex office were paid by Fluorodynamics. In addition, Frank Bennett used a car rented by Fluorodynamics and was afforded medical insurance through the Fluorodynamics benefits program.

Such minimal separate corporate identity as may have existed between Fluorodynamics and Fluorotex effectively vanished in January 1971, five months before the complaint herein was filed, when Fluorotex suffered a forfeiture of its corporate charter. An application for reinstatement was not filed until after commencement of the action.

Under all of the circumstances, the Court concludes that Fluorotex, at the time of commencement of this action, was merely a resident sales agent for Fluorodynamics, and its office con-

stituted a "regular and established place of business" of Fluorodynamics within this District. The separate corporate status, if any, of Fluorotex can and should be disregarded under the present facts, and the Court feels fully justified in piercing the corporate shield.

> "It is well established that where the interest of the corporation and the dominant shareholder are identical one is the alter ego of the other and the corporate form may be disregarded." Long v. McGlon, D.S.C., 1967, 263 F. Supp. 96, 98.

There is additional, well reasoned authority for piercing the corporate shield for purposes of establishing venue under 28 U.S.C. § 1400(b) as to a parent foreign corporation.

> " . . . formal corporate separateness can be disregarded for the purpose of establishing venue . . . where a number of factors . . . in the aggregate reveal a mere cloak for the relationship of agency." GAF Corp. v. Hanimex Corp., N.D.Ill.1968, 294 F. Supp. 495, 498.

See also Appleton v. Ronson Service of Illinois, N.D.Ill.1968, 297 F.Supp. 868.

The Fourth Circuit has had several occasions to pass upon the provisions of 28 U.S.C. § 1400(b), notably the *Manville Boiler* case, supra, American Cyanamid Co. v. Nopco Chemical Co. et al. 4th Cir., 1968, 388 F.2d 818, and Dow Chemical Co. v. Metlon Corp. et al., 4th Cir. 1960, 281 F.2d 292. In the *Manville Boiler* case the court found that a related sales corporation did not constitute a "regular and established place of business" of the controlling or "parent" corporation. However, this case stands on facts which are different in controlling respects. In the present case no substantive separateness was observed between parent and subsidiary. The Court is thus clearly justified in piercing the corporate shield, if not compelled to do so.

The case law relating to 28 U.S.C. § 1400(b) is well developed. See Scaramucci et al. v. FMC Corp., W.D.Okl.1966, 258 F.Supp. 598; Knapp-Monarch Co. v. Casco Products Corp. et al., 7th Cir. 1965, 342 F.2d 622, cert. den. 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73; Mid-Continent Metal Products Co. v. Maxon Premix Burner Company, Inc., 7th Cir. 1966, 367 F.2d 818; General Radio Company v. Superior Electric Co., 1st Cir. 1961, 293 F.2d 949; Jeffrey Galion, Inc. v. Joy Mfg. Co., N.D.W.Va.1971, 168 U.S.P.Q. 708; Morse v. Master Specialties Co., N.J.1964, 239 F.Supp. 641; Gaddis v. Calgon Corporation, D.C.N.D. Tex.1971, 170 USPQ 126; Teledyne Industries, Inc. v. Montgomery Ward & Co., Inc., et al., D.Col.1971, 170 USPQ 247. It appears from these and other cases that a close examination of many operative facts is required to determine questions of venue in patent cases. In the present case I have found, after examination of the facts, that Fluorotex is the alter ego of Fluorodynamics insofar as the accused product is concerned.

The Motion to dismiss of Fluorodynamics therefore must be denied.

## PLAINTIFF'S MOTION TO RESTRAIN FLUORODYNAMICS IN THE DELAWARE PROCEEDINGS

Plaintiff's motion to restrain Fluorodynamics from prosecuting the Delaware proceedings is based on the fact that the Delaware action was filed after the present action and presents essentially the same issues. Fluorodynamics does not contest plaintiff's version of the facts, but apparently brought the Delaware action in the expectation that the present South Carolina action would be dismissed.

In view of the denial of defendants' motion to quash service and to dismiss, plaintiff's motion to restrain Fluorodynamics in the Delaware proceeding will be granted.

It is a general rule in the federal courts that where litigation involving the same subject matter and the same parties is brought before two different but co-equal courts, the court first acquiring the case should be allowed to proceed with it. Carbide and Carbon

Chemicals Corp. v. United States Industrial Chemicals, Inc., 4 Cir., 1944, 140 F.2d 47, 49. See also Milwaukee Gas Specialty Co. v. Mercoid Corporation, 7 Cir., 1939, 104 F.2d 589, 592.

"The general rule is that the court first acquiring jurisdiction is entitled to maintain it until its duty is fully performed, and the jurisdiction involved is exhausted."

This Court has the authority to enjoin defendant Fluorodynamics from further prosecution of the Delaware action. In re Georgia Power Co., 5 Cir. 1937, 89 F.2d 218. There, two suits were filed, one in the District Court of Georgia and the other in the District Court of Tennessee, the Georgia suit having been the first to be filed. The Fifth Circuit affirmed the granting of the injunction by the District Court of Georgia restraining plaintiff's prosecuting of the Tennessee action:

"It necessarily follows that that (Georgia) court having prior jurisdiction of the cause, as between plaintiff and defendant, was authorized to issue an interlocutory injunction to preserve its jurisdiction."

### DEFENDANTS' MOTION TO TRANSFER

Both defendants have moved under 28 U.S.C. § 1404(a) for transfer of this case to the District of Delaware, in Wilmington, indicated to be a more convenient forum. Plaintiff resists the motion to transfer on several grounds. One ground is that a party in "default" has waived its right to contest venue.

Weatherford v. Radcliffe, E.D.S.C. 1945, 63 F.Supp. 107, 109; Robert E. Lee & Co. v. Veatch, 4 Cir., 1961, 301 F. 2d 434, 436; Evans v. Rushing, E.D.S.C. 1959, 175 F.Supp. 90, 91; Commercial Casualty Insurance Co. v. Consolidated Stone Co., 278 U.S. 177, 179–180, 49 S.Ct. 98, 99, 73 L.Ed. 252 (1929); Senitha v. Robertson, 4 Cir. 1930, 45 F.2d 51, 53–54; Hoffman v. Blaski, 1960, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254.

■ I have decided, however, that, to the extent that the defendants may have been technically served with process, their time to answer has been extended under Rule 6(b) and there has been no waiver of the right to move for transfer.

Plaintiff also objects to the motion to transfer as to Fluorotex on the ground that, at the time the action was filed, it could not have been brought against Fluorotex in the District of Delaware. See Hoffman v. Blaski, supra. In that case the Supreme Court ruled:

"But the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." [363 U.S. at 343–344, 80 S.Ct. at 1089–1090]

Plaintiff urges that its alleged inability to sue Fluorotex in Delaware defeats defendants' motion as to both parties:

" . . . a transfer is authorized by the statute only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of commencement of the action; i. e., venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants."—Shutte v. Armco Steel Corp., 3 Cir. 1970, 431 F.2d 22, 24.

After consideration of all the facts, I have decided that Fluorotex could have been sued in Delaware in the first instance. Of course, since Fluorotex is not a resident of Delaware, it must, under 28 U.S.C. § 1400(b), (a) have a "regular and established place of business" there and (b) have committed acts of infringement there. Both of these conditions have been satisfied.

■■ As noted before, there was a virtual absence of corporate separateness between Fluorotex and its parent Fluorodynamics, as plaintiff itself so strongly urged in opposition to Fluorodynamics'

motion to dismiss for improper venue. For this reason alone the Court could and does find that Fluorotex, through its alter ego, Fluorodynamics, has a regular and established place of business at Newark, Delaware, the main office of Fluorodynamics, and has committed acts, alleged to be infringements, there, through Fluorodynamics manufacture and sale of the accused products. The principle of piercing of the corporate shield applies to the subsidiary as well as to the parent, at least for purposes of 28 U.S.C. § 1400(b). Aileen Mills Co., Inc. v. Ojay Mills, Inc., S.D.N.Y. 1960, 192 F.Supp. 131.

■ Apart from the above, it appears from the facts adduced that, independent of the legal concept of piercing the corporate shield, Fluorotex does in fact have a regular and established place of business at Newark, Delaware and has committed acts of alleged infringement there. As to the latter, Fluorotex sold its products "F.O.B. Wilmington, [Delaware.] Under the patent statutes, 35 U.S.C. § 271, the selling of an infringing product is an act of infringement, and a sale "F.O.B. Wilmington" is a sale within the District of Delaware. S.O.S. Company et al. v. Bolta Company et al., N.D. Ill.1953, 117 F.Supp. 59. The evidence shows that much of the business of Fluorotex was actually carried on at the Fluorodynamics office in Newark, Delaware.

At the time this action was commenced, the activities of defendant, Fluorotex, were divided between Greenville, South Carolina, and Newark, Delaware. At Greenville, only sales solicitation functions were carried out.

Billing was handled at Newark, Delaware, the product was shipped from Newark, Delaware, and payment was received at Newark, Delaware. Usually, payment was sent directly from the customer to Fluorotex at Newark, Delaware, but on some occasions checks were sent to the Greenville office and then forwarded, uncashed, to Newark. For many years, the Fluorotex letterhead has recited both Greenville, South Carolina, and Newark, Delaware, places of business. Fluorotex invoices normally carried the stamped notation that payment should be remitted to "Fluorotex, Inc., Diamond State Industrial Park, Newark, Delaware 19711". All of these factors combined establish clearly that the defendant, Fluorotex, had a "regular and established place of business" in the District of Delaware at the time of commencement of this action. Service upon the defendant, Fluorotex, also was obtainable at Newark, Delaware. Its President and Chairman, James P. Shoffner, for example, maintained his office there.

Plaintiff, noting that Fluorotex, Inc. had forfeited its charter as of the time of commencement of the suit, argued that Fluorotex was non-existent as a corporate entity, and therefore could not have been sued in Delaware, but only in South Carolina, under South Carolina statutes providing for survival of causes of action against forfeited corporations. However, the State of Delaware, too, makes provision for the survival of actions against a forfeited corporation. Section 382 of the Delaware Corporation Law provides that any corporation doing business in Delaware shall be deemed to have thereby appointed and constituted the Secretary of State of Delaware its agent for the acceptance of process in any civil action arising out of any business transacted within Delaware. Section 278 of the Delaware Corporation Law further provides that corporations, whether they expire by their own limitations or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution for the purposes of prosecuting or defending suits by or against them.

Under all the circumstances, the Court is satisfied that the District of Delaware is a jurisdiction where, under 28 U.S.C. § 1404(a), the plaintiff could have brought its action in the first instance.

During argument, the defendants suggested that, if the Court determined that the defendant Fluorotex could not have been sued in Delaware, then the Court

could, under the authority of Leesona Corporation v. Cotwool Mfg. Corp., 4th Cir. 1962, 308 F.2d 895, transfer the action as to the parent and principal party in interest, Fluorodynamics, while staying further proceedings as to the subsidiary, Fluorotex. However, in view of the Court's finding with respect to Fluorotex, it is not necessary to consider the alternatives available under the authority of the *Leesona* decision.

■ The plaintiff argues strenuously that its right to select a jurisdiction should prevail, except in the face of the most compelling showing of inequity in favor of the defendants. The plaintiff relies upon the landmark case of Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1947, in which the Court states:

> "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

While the authority of the *Gulf Oil* case is undoubtedly controlling, the Court, after examination of the operative facts of record, concludes that the defendants have made out a compelling case in favor of transfer under 28 U.S.C. § 1404(a).

Some of the operative facts are as follows:

(1) Both the plaintiff, Penntube, and the principal defendant, Fluorodynamics, are corporations of Delaware, and their respective places of business are within about 20 miles of the location of the Federal Court of Wilmington, Delaware.

(2) Neither of the principals has a physical presence in the District of South Carolina. The only substantial contact of the parties in this District is the presence of the defendant Fluorotex, which has been established to be little more than a branch sales office for the principal defendant, Fluorodynamics.

(3) The patents in suit are granted to three patentees. Two of these are employees of Penntube and are available to process of the Court in Wilmington. The third patentee resides within 30 miles of the Wilmington Court, and would also be available to process of the Wilmington Court. As inventors and patentees of the patents in suit, these men clearly will be significant witnesses.

(4) The defendants assert that one of the defenses to be presented will be that, by reason of the special techniques of product manufacture, the defendants' products do not infringe the plaintiff's patents. Defendants indicate that proof directed to that issue will involve testimony of personnel of the defendants' supplier, a company located in Manheim, Pennsylvania, about 50 miles from Wilmington, within the subpoena power of the Wilmington Court.

(5) The defendants have made of record certain technical reports of the duPont Company, which defendants plan to rely upon heavily in defense of this action. One of those reports was authored by a man, one H. J. Haon, residing in Westfield, New Jersey, within a 100-mile radius of Wilmington, Delaware, and therefore subject to the subpoena power of the District Court in Wilmington. Plaintiff has referred to a road mileage chart of a commercial road map in urging that the witness Haon resides more than 100 miles from the District Court in Wilmington, Delaware, which fact is disputed by an affidavit submitted by defendant. Since Westfield is so much closer to Wilmington than to South Carolina, regardless of whether or not it might be a few miles more than 100 road miles from Wilmington, the Court recognizes that it will be much more likely that Mr. Haon can testify in person in Wilmington. Furthermore, with the advent of air travel as a common means of public conveyance, Westfield might be considered within the bounds of the application of Rule 45(e) (1); (Merchant Bank of New York v. Grove Silk Co. (M.D.Pa.), 11 F.R.D. 439).

(6) In addition to the above, the evidence submitted before me by the defendants identifies a number of additional witnesses involved in various ways with the subject matter of the duPont reports, who live in and around Wilmington, Delaware, and can be subjected to the subpoena power of the Wilmington

Court: E. A. Stecca, author of an important duPont report, resides in Wilmington, Delaware; W. B. Thompson, Wilmington, Delaware, was the supervisor of author H. J. Haon at the time of the work reported in the Haon report; R. E. Brooks, Wilmington, Delaware, was the supervisor of Mr. Thompson, having knowledge of some of the work reported by H. J. Haon; W. B. Watkins, Wilmington, Delaware, was a production plant-to-sales liaison man for Teflon FEP products of duPont in the 1959–61 period and would be familiar with the duPont development of Teflon FEP heat-shrinkable tubing; E. D. Champney, Wilmington, Delaware, was Assistant Marketing Manager for Fluorocarbon Sales of du-Pont during at least part of the 1959–1961 period and would be knowledgeable with respect to the initial sales efforts of duPont with respect to heat-shrinkable Teflon FEP tubing; G. L. Moore and G. C. Nielsen both received several copies of the Haon report and could testify that the district sales offices were intended to discuss and reveal the contents of these reports to customers and that copies of these reports were often given to substantial customers (Mr. Moore resides in Kennett Square, Pennsylvania, 15 miles from Wilmington, Delaware, and Mr. Nielsen resides in Wilmington, Delaware); R. B. Fehr could testify along the same lines as G. L. Moore and G. C. Nielsen and, in addition, is understood to have a close and personal working relationship with the plaintiff (Mr. Fehr resides in Westchester, Pennsylvania, about 20 miles from Wilmington, Delaware); R. A. Kellar, who was Marketing Manager for fluorocarbon products during the 1959–61 period and would be knowledgeable with regard to the initial sales program of duPont relating to heat-shrinkable FEP tubing, resides in Wilmington, Delaware; William P. Weisenberger, now residing at Wilmington, Delaware, formerly was employed at du-Pont's Buffalo, New York, plant, where considerable development work was performed on heat-shrinkable Teflon FEP, either by or under the direct supervision of Mr. Weisenberger.

(7) Defendants have asserted that probable defenses will concern *inter alia* a license agreement entered into between the plaintiff and the duPont Company, with respect to which defendants expect to take the testimony of various Wilmington personnel of duPont.

(8) Although there are some purchasers in the District of South Carolina of the allegedly infringing product, the evidence shows that there are other, similar customers within the area of the subpoena power of the Wilmington District Court.

(9) Neither plaintiff nor defendants have any principal employees, any physical facilities, or any records in this District. All parties have their main files facilities and principal employees located in the District of Delaware, convenient to the Court there. The forfeited corporation, Fluorotex, did have a small rented office, some sales records, and a single salesman in Greenville when this action was commenced, but this is not influential in the Court's determination of defendants' motion to transfer. The salesman was hired less than a week before the action was commenced and could not be expected to be a significant witness.

(10) All of the officers and directors of the defendant companies reside in and about Wilmington, Delaware, convenient to the Court there.

(11) Trial of this action in the District of South Carolina would involve inconvenience, added expense and substantial extra travel to all of the parties involved (even the principals of the South Carolina corporation, Fluorotex, are located in Delaware—only a local salesman resides in Greenville).

The Court is impressed with the fact that many important witnesses will be available to the District Court in Wilmington, who could not be compelled to testify in this District. The importance of having live testimony of such witnesses has been recognized in this Circuit as a compelling reason for transferring, particularly in patent cases. See International Nickel Co., Inc. v.

Martin J. Barry, Inc., 4th Cir. 1953, 204 F.2d 583, where the Court noted:

> "Depositions of witnesses on the important issue of prior use, where the credibility of the witnesses is a crucial matter, would not be nearly so satisfactory as having the witnesses testify in person before the trial judge who must pass upon the issue."

In patent cases, motions for transfer are frequently brought and frequently granted where the action is brought in a jurisdiction remote from the records and witnesses of the principal parties.

> "Under this section [1404(a)] transfer of an action to another district is in the sound discretion of the court and that discretion has been exercised frequently in patent infringement cases of the type here involved." Leesona Corp. v. Cotwool Mfg. Corp., (D.C.S.C.) 204 F. Supp. 139, 140.

See also General Tire & Rubber Co. v. Watkins et al., 4th Cir. 1967, 373 F.2d 361; General Electric v. Westinghouse Electric Corp., D.Del.1968, 294 F.Supp. 36; Burroughs Corp. v. Newark Electronics Corp. et al., N.D.Ill.1970, 317 F.Supp. 191.

■ The plaintiff has argued that its action, which was filed in South Carolina prior to the filing of defendants' Delaware action, should be the prevailing action under the rule of Kerotest Manufacturing Company v. C–O–Two Fire Equipment Company, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. As a general principle, the first filed action should indeed prevail, and that is the principle on which I have decided to enjoin Fluorodynamics from proceeding further with the Wilmington action. Small v. Wageman, 1st Cir. 1961, 291 F.2d 734; Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10th Cir. 1950, 180 F.2d 97; Food Fair Stores v. Square Deal Market Co., 1951, 88 U.S.App.D.C. 176, 187 F.2d 219. However, the principle of the *Kerotest* case does not operate to defeat a motion to transfer which is otherwise properly brought. If the motion to transfer is properly founded, the fact that the moving party has instituted a subsequent-ly filed action in the transferee district does not disqualify it from the relief to which it is entitled. It is to be preferred, however, that the dispute between the parties proceed on the first filed action, even though it has been transferred; the Court has so provided in its disposition of the various motions before it.

Among the reasons advanced by plaintiff in opposition to defendants' motion to transfer was that it could expect a more prompt trial in this District as compared to the proposed transferee District of Delaware. The Court, however, finds this reason to be lacking in substance. It appears from the record that plaintiff has been aware of the allegedly infringing activities for approximately five years, yet it did not commence this action until a few months ago. Under the circumstances, a possible brief time advantage in bringing the matter to trial is neither controlling nor persuasive. The evidence shows that the trial calendar of the District Court in Wilmington is substantially current.

The circumstances of this case are not unlike those of the recently decided Detrick v. Baltimore & Ohio Railroad Co., E.D.Pa.1971, 330 F.Supp. 257. In that case, the only association of the plaintiff with the original forum was plaintiff's original selection of that forum and the location of its attorneys there. In granting a motion to transfer to the District of Maryland, the Court noted that seven of eight persons known to be witnesses were within the subpoena power of the Maryland court but beyond that of the Pennsylvania court. The Court there, after pointing out the generality that each case involving *forum non conveniens* is, in a sense, *sui generis*, granted defendant's motion to transfer, relying heavily upon the fact that, under the circumstances at hand, it was especially important to have the eye witnesses and medical witnesses testify personally at trial. In this present case, the availability of a number of important witnesses to give personal testimony at the District Court in Wilmington is a persuasive factor in favor of granting defendants' motion to transfer.

The parties having presented evidence and memoranda and having been heard in oral argument on September 14, 1971,

It is ordered:

(1) Defendants' motion to quash service shall be, and the same hereby is, denied.

(2) Defendants shall have twenty (20) days from the date hereof in which to file answer to plaintiff's Complaint herein.

(3) Defendants' Motion to Dismiss for improper venue shall be, and the same hereby is, denied.

(4) Defendant Fluorodynamics shall be and hereby is enjoined and restrained from prosecuting further the action of Fluorodynamics, Inc. v. Penntube Plastics Company, Civil Action No. 4161, pending in the District Court of Delaware, except that Fluorodynamics may take steps to effect dismissal of such action.

(5) Subject only to defendants' filing of Answer within the time set by item 2 of this Order, this cause shall be transferred to the District Court for the District of Delaware. Upon and subject to timely filing of such Answer, the Clerk is directed to transmit the file of this action to the Clerk of the District Court of Delaware.