The STANLEY WORKS

v.

GLOBEMASTER, INC., a Corporation
of Texas, et al.

Civ. A. No. 74–4110–T.

United States District Court,
D. Massachusetts.

Aug. 12, 1975.

Joseph L. Cotter, Goodwin, Procter & Hoar, Boston, Mass., Peter L. Costas, Hartford, Conn., for plaintiff.

Fish & Richardson, Robert E. Hillman, Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

This is an action for patent infringement and unfair competition brought by The Stanley Works Corporation against Globemaster, Inc., Globemaster New England, a regional subsidiary of Globemaster, Inc., and three individuals who are officers of both corporations, Robert Bernstein, Harold Klebanoff and Edmund Perwein.

The Stanley Works is engaged in the design, manufacture and sale of various products, including hand tools, which are widely used in this country and abroad. In 1971, it designed and developed a product called the "Center Square" which is used to determine the center of circular workpieces.[1] It obtained a patent on this device in 1973. Sometime thereafter, Globemaster, Inc. manufactured, and Globemaster New England marketed, a so-called "J Square" which, plaintiff alleges, duplicates the unique ornamental appearance of Stanley Works' Center Square. The Stanley Works thereupon instituted this lawsuit.

The Stanley Works is a Connecticut corporation with its principal place of business in New Britain. Globemaster, Inc. is a Texas corporation, with its principal place of business in Houston. Globemaster New England is a Delaware Corporation with places of business in both Houston and Lawrence, Massachusetts. The three individual defendants are all residents of Texas.

Currently pending are a series of motions by various defendants seeking dismissal of this action. All of the defendants challenge this court's subject matter jurisdiction and the service of process which was made upon them. Additionally, some of the defendants claim that this court lacks personal jurisdiction and/or that venue is improper in this district. The issues raised by the various motions to dismiss will be discussed in the following order:

1. Subject matter jurisdiction
2. Venue over Globemaster New England
3. Venue over Globemaster, Inc.
4. Service upon Globemaster New England
5. Service upon Globemaster, Inc.
6. Personal jurisdiction over and service upon Bernstein, Klebanoff and Perwein.[2]

## I

## SUBJECT MATTER JURISDICTION

The parties agree, as they must, that this court has subject matter jurisdiction over that part of plaintiff's complaint alleging patent infringement.

---

1. A sketch of the Center Square appears in the appendix to this opinion.

2. Several other questions are raised by motions to dismiss: Is venue in this district proper over the three individual defendants?

Has the plaintiff stated a claim upon which relief could be granted against any defendant? In view of this court's disposition of the matters discussed in the text, it does not reach these issues.

Federal district courts have exclusive jurisdiction over such actions, 28 U.S.C. § 1338(b);[3] *United States v. American Bell Telephone*, 159 U.S. 548, 16 S.Ct. 69, 40 L.Ed. 255 (1895); *Homewood Industries v. Caldwell*, 360 F.Supp. 1201, 1204 (N.D.Ill.1973), which is not defeated by allegations denying the merits of the claim. 1 J. Moore, Federal Practice ¶ 0.60[8.–7].

■■ Nor can there be any serious question over this court's subject matter jurisdiction over plaintiff's claim of unfair competition under state law. There is complete diversity between plaintiff and defendants and, accepting as true the allegations of the complaint, the amount in controversy is considerably greater than $10,000. Moreover, 28 U.S.C. § 1338(b) gives this court subject matter jurisdiction over any unfair competition claim "when joined with a substantial and related claim" under the patent laws. *Blanchard & Co. v. Charles Gilman & Son*, 353 F.2d 400 (1st Cir. 1965). In the instant case, the factual allegations behind The Stanley Works' claims of predatory business practices in the alleged copying of the Center Square design and alleged simulation of plaintiff's marketing techniques, are so intimately linked to the allegations surrounding its claim of patent infringement that both issues should be considered in the same lawsuit. Certainly, Congress' desire to avoid piecemeal litigation in an already complex area of the law is well-served by treating these two claims together. *See* Reviser's Note to 28 U.S.C. § 1338(b).

The cases cited by the defendants, *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), do not support their challenge to the unfair competition claim. In *Sears* the manufacturer of a floor-to-ceiling "pole lamp" brought an action against Sears Roebuck, alleging that the defendant's marketing of an identical lamp infringed upon plaintiff's design and mechanical patents and so confused the market as to constitute unfair competition under state law as well. The courts below found the patent invalid, but held that the plaintiff had made out a claim of unfair competition. The Supreme Court, reviewing only the unfair competition question, reversed. It held that state unfair competition laws could not prohibit what the federal patent laws allowed and, therefore, the copying of an unprotected article could not be barred. *Compco* was a companion case in which the court reached the same result.

Neither *Sears* nor *Compco* questioned the subject matter jurisdiction of a district court over an unfair competition claim pendent to a claim for patent infringement. Both cases were decided on the merits, *after* the patent-in-suit had been adjudged invalid, a point which is yet to be reached in the instant litigation.

Moreover, as the concurring opinion of Mr. Justice Harlan noted, both cases reached only the question of whether the mere "copying" of an unpatented item could be forbidden by state law. The court did not decide whether an unfair competition claim could be made out where the defendants made the additional allegation that the copying was done "with the dominant purpose and effect of palming off one's goods as those of another or of confusing customers as

3. 28 U.S.C. § 1338 provides:
 (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

 (b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.
 *Cf. Bowers v. Moreno*, 520 F.2d 843 (1st Cir., 1975).

to the source of such goods . . . ." *Id.* at 239, 84 S.Ct. at 783. Plaintiff's complaint may well raise those very issues. The motion to dismiss for lack of subject matter jurisdiction must therefore be denied.

## II

## VENUE

■ Venue in patent infringement actions is governed exclusively by 28 U. S.C. § 1400(b).[4] *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); C. Wright, Law of the Federal Courts § 43, at 158 (2d ed. 1970). It provides a plaintiff two choices of forum. He may file an infringement action either "in the judicial district where the defendant resides," or "where the defendant has committed acts of infringement and has a regular and established place of business." For a corporate defendant "the judicial district where the defendant resides" is the district of incorporation, *Fourco Glass Co. v. Transmirra Products Co.*, 353 U.S. at 226, 77 S. Ct. 787, 1 L.Ed.2d 786, for an individual it is equivalent to domicile. *Id.; Technograph Printed Circuits v. Packard Bell Electronics Corp.*, 290 F.Supp. 308, 324 (C.D.Cal.1968); Wydick, Venue in Actions for Patent Infringement, 25 Stan. L.Rev. 551 (1973). Because none of the defendants can be considered "residents" of Massachusetts, the plaintiff must show that they meet the alternative tests provided in 1400(b).[5] Each must have a regular and established place of business in Massachusetts and commit an act of infringement here. The two elements are conjunctive; satisfaction of one will not suffice. The burden of proving proper venue is on the plaintiff. *Grantham v. Challenge-Cook Brothers, Inc.*, 420 F.2d 1182 (7th Cir. 1969).

■ The meaning of "regular and established place of business" has been explored in a number of patent cases. *See, e. g., General Radio Co. v. Superior Electric Co.*, 293 F.2d 949 (1st Cir. 1961); *Coleco Industries, Inc. v. Kransco Manufacturing, Inc.*, 247 F.Supp. 571 (S.D.N.Y.1965); *Clearasite Headware, Inc. v. Paramount Cap Manufacturing Co.*, 204 F.Supp. 4 (S.D.N.Y. 1962). It is apparent that the statute requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the "doing business" test of the general venue provisions of the Code: *See* 28 U.S.C. § 1391(c).[6]

> Mere "doing business" in a district is not of itself sufficient to confer venue in patent suits. Something more is required. It must appear that a defendant is regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control.

*Manstantuono v. Jacobsen Manufacturing Co.*, 184 F.Supp. 178, 180 (S.D.N. Y.1960) (citation omitted).

■ The term "acts of infringement" has also evolved its own meaning in this context. Acts of infringement for purposes of 28 U.S.C. § 1400(b) are defined in 35 U.S.C. § 271. Section 271 lists such acts as the manufacture, use or sale of an infringing item. In this regard, the term sale has developed a practical rather than theoretical interpretation. It is no longer necessary for a completed transaction to take place in a district

---

4. 28 U.S.C. § 1400(b) provides:
 Any civil action for patent infringement may be brought in the judicial district where the defendant resides, *or* where the defendant has committed acts of infringement. (emphasis supplied).

5. Globemaster, Inc. is a resident of Texas. Globemaster New England is a resident of Delaware. The plaintiff has made no allegation, nor offered any evidence, upon which the court could determine the *domicile* of the three individual defendants.

6. 28 U.S.C. § 1391(c) provides:
 A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

for venue to lie, *Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915) (dictum), so long as the defendant participates significantly there in the marketing activities leading to its consummation. *Union Asbestos & Rubber Co. v. Evans Products Co.*, 328 F.2d 949 (7th Cir. 1964).

## A.

Viewed in this light, Globemaster New England properly does not challenge venue in this district. With its local office in Lawrence, Massachusetts, it acts as the distributor of Globemaster products in New England and Upstate New York. There it employs a team of 15–20 salesmen, as well as supporting staff, whose sole responsibility is to sell Globemaster products throughout Globemaster New England's designated territory.[7] Although Globemaster New England might best be described as a regional sales outlet servicing a portion of Globemaster, Inc.'s diverse market, the activities which are centered in Massachusetts are of such breadth and depth as to indicate that Globemaster New England is regularly and permanently engaged in carrying out a substantial portion of its ordinary business in Massachusetts and, in so doing, has committed acts which have allegedly infringed upon The Stanley Works' patent.[8]

## B.

In contrast, Globemaster, Inc. maintains that, as to it, the requirements of the patent venue statute have not been met. Unlike its New England subsidiary, it claims no place of business in Massachusetts, nor does it concede participation in any in-state activities that would rise to the level of "acts of infringement," even under a liberal definition of that term. In response, The Stanley Works argues that because of the control exerted over Globemaster New England and its other subsidiaries by Globemaster, Inc., the subsidiaries are merely its alter-egos and the court should therefore pierce the corporate veil to find venue over the foreign parent to which Globemaster New England is so closely linked. *See, e. g., Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183 (7th Cir. 1968); *Penntube Plastics Co. v. Fluorotex, Inc.*, 336 F.Supp. 698 (D.S.C.1971); *Appleton v. Ronson Service of Illinois, Inc.*, 297 F.Supp. 868, 870 (N.D.Ill.1968); *GAF Corp. v. Hanimex Corp.*, 294 F. Supp. 495 (N.D.Ill.1968).

It is, of course, well settled that venue over a local subsidiary will not automatically provide proper venue over a foreign parent. As the Court held in *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S. Ct. 250, 69 L.Ed. 634 (1925), the independence of parent and subsidiary corporations must be respected when they carefully maintain their separation.[9] In more recent years, however, as cases in this area proliferated, courts have become more willing to look beyond the form to the substance of a corporate relationship and find venue over a foreign

---

7. Globemaster New England at no time challenges venue in this district, Motion to Dismiss ¶ II, and indeed at oral argument its counsel conceded that venue over that corporation is proper in Massachusetts. A determination of proper venue over Globemaster New England, however, is essential to a determination of whether venue is proper over Globemaster, Inc.

Globemaster New England does not deny that this court has personal jurisdiction over it. Defendants' Reply Memorandum in Support of its Motions to Dismiss at 9.

8. An invoice for two sales within the district is contained in Exhibit 17C to the deposition of defendant Perwein.

9. Although *Cannon* is cited as a leading case on the question of venue in patent infringement suits it actually arose out of a breach of contract action in state court where the defendant challenged the court's jurisdiction over his person. On that score, its continuing validity is open to some question since it preceded *International Shoe* by twenty years.

Moreover, the facts of *Cannon* are distinguishable from more recent cases which have been willing to ignore formal corporate separation. In *Cannon*, the plaintiff brought an action against the Alabama marketing subsidiary of Cudahy Co. in North Carolina, where the subsidiary had an office. The Alabama subsidiary, however, was the only

parent where the local subsidiary is merely an agent through which the parent conducts business in the jurisdiction and with no real semblance of individual identity. *Compare Shapiro v. Ford Motor Company,* 359 F.Supp. 350 (D.Md. 1973), *with Penntube Plastic Company v. Fluorotex, Inc.,* 336 F.Supp. 698 (D.S.C. 1971).

In making this determination, a wide range of evidence—corporate structure, personnel, operations—is relevant. One factor, standing alone, may well not be a sufficient basis for disregarding formal individuality. *Leach Co. v. General Sani-Can Manufacturing Corp.,* 393 F.2d 183, 186 (7th Cir. 1968). Yet when the full scope of evidence is considered, surface appearances may be exposed as a mere cloak for a far more intimate and symbiotic relationship. *Id.; Appleton v. Ronson Service of Illinois, Inc.,* 297 F.Supp. 868, 869 (N.D.Ill.1968).

That is the situation here. At first glance, Globemaster New England may appear to be an independent entity, with separate by-laws, separate tax returns and separate meetings of its Board of Directors. Closer examination of its activities reveals, however, a carefully-sewn web of interrelationships and interdependence between parent and subsidiary making its individual identity more apparent than real.[10]

Globemaster, Inc. was originally established as a Minnesota Corporation in 1961. Plaintiff's Exhibit 6 [hereinafter P.]. In 1967, a Texas corporation of the same name was formed, into which the Minnesota corporation was merged. P. 1. The stockholders of the surviving

corporation are the eight domestic Globemaster distributors, including Globemaster New England.[11] Transcript of Deposition of Edmund Perwein at 11 [hereinafter TR.]. None of these shareholders may sell their Globemaster stock without first offering it to the parent company. P. 2A.

Defendant Bernstein is President of Globemaster, Inc. and Secretary of Globemaster New England. Defendant Klebanoff is Treasurer and Assistant Secretary of Globemaster, Inc. and President of Globemaster New England. Defendant Perwein is Vice President of both companies and Secretary of Globemaster, Inc. Bernstein and Perwein are the sole stockholders of four Globemaster distributors, while Bernstein, Perwein and Klebanoff share ownership in the remaining four. Defendant Perwein is an officer of all Globemaster companies. None of the individual defendants visit Massachusetts on an average of more than once a year. TR. 24–26.

Meetings of the stockholders and Boards of Directors of both Globemaster New England and Globemaster, Inc. take place at Globemaster, Inc.'s Texas headquarters, sometimes on the same day and generally including the same individuals. P. 11; TR. 43.

The business of Globemaster, Inc. is to provide services for the Globemaster distributors, including purchasing, bookkeeping, advertising, financial and management activities. Globemaster, Inc. either manufactures or purchases the entire and exclusive product line sold by its subsidiaries. TR. 18–19. All prod-

---

arm of the Cudahy organization which was separately incorporated. Thus, even though it was solely-owned by the defendant, the Alabama corporation's status in the corporate hierarchy was special, if not unique, a factor which the Court refused to ignore.

Nor was there any indication that any of the other indicia of interdependence which courts have found in recent cases, *see* text accompanying *notes* 11–12 *infra*, were present.

10. The parties have agreed that the court should rely upon the deposition of defendant Perwein and the exhibits which accompany

it in making its decision on the venue question.

11. The eight domestic Globemaster distributors are: Globemaster Atlanta, Globemaster Baltimore, Globemaster Chicago, Globemaster Rocky Mountain, Globemaster Southwest, Globemaster Midwest, Globemaster New England and Globemaster Northwest. TR. 5–6. In addition Globemaster Germany and Globemaster Italy are foreign sales outlets while Globemaster Korea and Globemaster Taiwan serve as foreign purchasing agents. TR. 13–17.

ucts sold by the subsidiaries bear the Globemaster trademark. TR. 21.

Although individual ledgers for each of the Globemaster subsidiaries are maintained, TR. 70, Globemaster, Inc.'s bookkeeping procedures carefully link all parts of the organization. The financial records of all subsidiaries are kept by Globemaster, Inc. in Houston. TR. 55. There, sales data from all subsidiaries is fed into Globemaster, Inc.'s computer which then may be programmed to print out individual lists reflecting sales at each branch. TR. 52, 56; P. 14. When Globemaster, Inc. "sells" merchandise to Globemaster New England, the transaction is recorded on Globemaster New England's books by Globemaster, Inc. TR. 55. Globemaster, Inc., then effects an interbank transfer to reflect payment by Globemaster New England to itself. TR. 55. When Globemaster New England sells the merchandise to its customers, payment is collected by Globemaster, Inc., TR. 55; P. 19, which then deposits the funds in Globemaster New England's Houston account. TR. 55. Globemaster New England does not prepare its own budget or fiscal projections, TR. 43, presumably relying upon Globemaster, Inc. to provide these services.

The order form used by the Globemaster companies identifies their principal office as that of Globemaster, Inc. and the Globemaster branch companies as warehouses. P. 14. When an order is written by a salesman at a Globemaster branch, it is sent to Globemaster, Inc. for processing, including a credit check and preparation of a "picking ticket" and bill of lading. The order is sent to the branch that contracted to supply the merchandise which fills the order, signs the bill of lading and returns the picking ticket and bill of lading to Houston. Globemaster, Inc. then prepares the invoice and collects the sums due from the customer. TR. 47–53. Globemaster, Inc.'s computers then record the sale. TR. 52.

The management services performed by Globemaster, Inc. are under the direction of the Texas office. TR. 26. Globemaster, Inc. has published a "Branch Procedures Manual" which contains instructions for operation of the various branch Globemaster companies. The manual refers to local supervisors as "branch managers" and to shipments between Globemaster companies as "interbranch shipments." TR. 40–42; P. 12. Globemaster, Inc. also prepares promotional literature identifying the various Globemaster companies. TR. 42. A price list for Globemaster products is prepared by Globemaster, Inc. and submitted to Globemaster distributor companies.

A pension trust agreement is maintained and operated by Globemaster, Inc. for its employees at the various Globemaster branch companies. Bernstein, Klebanoff and Perwein are its trustees. TR. 38.

A group insurance program for the employees of Globemaster New England is administered by Globemaster, Inc. It includes coverage for employees of the other Globemaster companies. TR. 39.

Globemaster, Inc. and the Globemaster branch offices have entered into an agreement whereby loans arranged by Globemaster, Inc. for the Globemaster group are mutually guaranteed. TR. 66–70.

Bernstein, Perwein and Klebanoff, the three principal officers and stockholders of Globemaster New England are paid salaries only by Globemaster, Inc. TR. 39.

All five defendants are jointly represented by one attorney in the instant case.

On these facts, where parent and subsidiary have disregarded all but the formalities of separation, their paper independence must be ignored for purposes of venue. The motion to dismiss for improper venue on behalf of Globemaster, Inc. is denied.[12]

12. The only patent venue decision on which the defendants rely for an opposite conclusion is *Shapiro v. Ford Motor Company*, 359 F.Supp. 350 (D.Md.1973). In that case, the

## IV
## SERVICE OF PROCESS

Perhaps because of the extent and effect of their activities in Massachusetts, neither corporate defendant has challenged this court's personal jurisdiction over it, preferring instead to force the plaintiff to meet the more onerous requirements of the patent venue statute.[13] They do, however, claim that they were improperly served and have therefore presumably not received proper notice of the pendency of this lawsuit.

## A.

Globemaster New England's claim of improper service is without merit. According to the Marshal's return, service was made on the local subsidiary by personally serving "Gary Sand" [sic] the branch manager of Globemaster New England's Lawrence facility, at 4:00 p. m. on October 11, 1974. Globemaster New England has made no claim, nor has it offered any evidence, which would lead this court to look behind the Marshal's representation.[14]

court refused to pierce the corporate veil to find venue over the Ford Motor Company in Maryland because venue over its marketing subsidiary was arguably proper there. In doing so, however, the court relied upon a number of factors which indicated that the subsidiary was not merely an alter ego for Ford but had powers and responsibilities in its own right (e. g., sole responsibility for sales; maintaining of sales records and bank accounts; payment of operating expenses and payroll) which Globemaster New England clearly lacks.

The defendants also attempt to distinguish a number of recent patent cases in which courts have found venue over a foreign parent by pointing out that there were present in those cases factors which may be absent here. See, e. g., Leach Co. v. General Sani-Can Manufacturing Corp., 393 F.2d 183 (7th Cir. 1968); Gray v. Eastman Kodak Co., 53 F.2d 864 (E.D.Pa.1930). Penntube Plastics Co. v. Fluorotex, Inc., 336 F.Supp. 698 (E.D.Pa.1972); Appleton v. Ronson Service of Illinois, Inc., 297 F.Supp. 868 (N.D. Ill.1968); GAF Corp. v. Hanimex Corp., 294 F.Supp. 495 (N.D.Ill.1968). Of course, most of the factors cited by those courts in support of their conclusions are also cited by the plaintiff here. More significantly, however, the key question in this area is not whether all factors in one case duplicate those in another, but rather whether the composite picture in any case is one in which a court is justified in piercing the corporate veil. In no case is any one factor decisive.

13. See note 1 supra.

There is some confusion on this point with regard to Globemaster, Inc. The defendants are jointly represented by one attorney. At no point in either his motions or supporting memoranda does counsel explicitly challenge personal jurisdiction over Globemaster, Inc., although personal jurisdiction over the three individual defendants

is clearly raised. In counsel's discussion of venue over Globemaster, Inc., however, he does occasionally refer to the problem as a "jurisdictional" one, although the two concepts are theoretically and practically distinct. 4 C. Wright and A. Miller, Federal Practice and Procedure § 1063 (1969).

Even if a challenge to personal jurisdiction over Globemaster, Inc. has been properly raised, it has no merit. Under the doctrine of McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957), the effect of its activities upon Massachusetts provide sufficient minimum contacts with this state to confer personal jurisdiction over Globemaster, Inc. Of course, in the context of a patent infringement action the issue of what constitutes "minimum contacts" is a matter of federal law. 4 C. Wright and A. Miller, Federal Practice and Procedure § 1075, at 302 (1969); cf. Arrowsmith v. United Press International, 320 F.2d 219, 228 n. 9 (2d Cir. 1963) (en banc).

14. The motion to dismiss and accompanying affidavit were filed exactly one month before service upon Mr. Sands was made, which might account for some confusion on this issue. In its original Memorandum, Globemaster New England does not deny service outright but states only that "on information and belief" it was not made. See Affidavit accompanying Memorandum in Support of Motions to Defendants. Then, in its subsequent reply memorandum it states that "[i]f such service has been made [on Gary Sands], Defendant Globemaster New England, Inc. admits service of process on it." Defendant's Reply Memorandum in Support of its Motions to Dismiss at 10. In any event, Globemaster New England has not offered an affidavit or other evidence from either Mr. Sands or any other member of the Globemaster organization which would refute the information on the Marshal's return.

Service upon a corporate defendant may be made by delivering process to a managing or general agent of the corporation, regardless of whether he has any express or implied authority to receive papers on behalf of the corporation.[15] According to the first clause of Rule 4(d)(3) the agent's position with the organization establishes his authority. 4 C. Wright and A. Miller, Federal Practice and Procedure § 1101, at 382–83 (1969).

The second clause of Rule 4(d)(3) provides an alternative basis for upholding service here. It provides that service upon a corporate defendant shall be proper if a copy of the summons and complaint are delivered to an agent "authorized by federal statute to receive service of process." 28 U.S.C. § 1694 is such a statute. It provides:

> In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business.

*See generally* 2 J. Moore, Federal Practice ¶4.14, at 1061. Thus, in patent infringement actions, a more liberal test of service is also applicable. The statute does not require that service be made on an officer or managing agent, but only that it be made on the "agent or agents engaged in conducting such business." *Shelton v. Schwartz*, 131 F.2d 805 (7th Cir. 1942); *Kerr v. Port Huron Sulphite and Paper Co.*, 157 F.Supp. 685 (D.N.J.1957). It may be that section 1694 does not encompass service upon every employee at the Globemaster New England offices, but service upon the supervisor of a regional office of a company, whose principal officers visit Massachusetts only once a year, would seem clearly to be within the boundaries established by the statute.

Moreover, service upon Globemaster New England under either provision meets the underlying standard of Rule 4(d)(3), *i. e.*, that the defendant be served in the manner reasonably calculated to give it actual notice of the proceedings against it. *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Thus, even if Sands' position in the Globemaster hierarchy did not invest him with the authority which his title normally implies, service upon him did, as a practical matter, provide actual notice of the pendency of this lawsuit to Globemaster New England. *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F.Supp. 622 (S.D.N.Y. 1969). Under these circumstances, the court must conclude that service upon Globemaster New England met both the letter and spirit of Rule 4(d)(3).

### B.

Likewise, service upon Mr. Sands was sufficient to constitute sufficient service upon Globemaster, Inc. Rule 4(d)(3) allows service on a foreign parent through proper service on a local subsidiary where (1) the local subsidiary has minimum contacts with the forum, and (2) where the relationship between parent and subsidiary is such that the subsidiary is a mere conduit for the activities of its parent. *Toyko Boeki (U. S. A.), Inc. v. S. S. Navarino*, 324 F.Supp. 361 (S.D.N.Y.1971). *See Keller v. Clark Equipment Co.*, 367 F.Supp. 1350 (D.N.D.1973). By having a regular and established place of business in Massachusetts, Globemaster New England has *a fortiori* established minimum contacts in Massachusetts to provide this court personal jurisdiction over it. Moreover, the symbiosis which allowed this court to find venue over Globemaster, Inc. is also dispositive on

---

15. Rule 4(d)(3) provides for service [u]pon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

the subject of sufficient service. Service upon Globemaster, Inc. was, therefore, proper and its motion to dismiss on that basis must be denied. *See generally* 4 C. Wright and A. Miller, Federal Practice and Procedure § 1105 (1969).

## V.

### PERSONAL JURISDICTION

More troublesome is the motion to dismiss on behalf of the three individual defendants alleging that this court lacks in personam jurisdiction over them. None of these defendants have Massachusetts domiciles, and by properly raising the question, they have avoided conferring personal jurisdiction by consent. No agent for service of process in this district has been appointed for them, nor have these defendants been served while present in the state. Indeed, all parties concede that the only association which the individual defendants have with Massachusetts is the visit which each makes to the state on an average of once a year. On these facts the defendants clearly lack the requisite "minimum contacts" with Massachusetts which would allow the maintenance of this suit against them without offending "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The plaintiff would find personal jurisdiction over the three individuals by either of two theories. First, it would pierce the corporate veil once again, thereby finding personal jurisdiction over the three individual defendants because the court has personal jurisdiction over the corporations with which they are so intimately associated. Second, it would apply the Massachusetts long-arm statute thereby conferring personal jurisdiction over the defendants under state law. Neither theory, however, has merit.

The device of piercing the corporate veil, which has become so useful in patent litigation for establishing venue over a foreign corporate defendant, is totally inappropriate for establishing personal jurisdiction over an individual who works and lives elsewhere. The parties have not cited, nor has the court found, any case where a federal court has found personal jurisdiction over an absent individual because of in-state activities of a corporation with which he was associated. *Cf. Carolyn Chenilles Inc. v. Ostow & Jacobs, Inc.,* 168 F.Supp. 894 (S.D.N.Y. 1958). More significant, however, such a theory ignores the fundamental differences which underlie the concepts of personal jurisdiction and venue.

The necessity of personal jurisdiction is, in essence, a requirement that a court have the power to summon a particular defendant before it to adjudicate a claim against him. Although in recent years the boundaries of permissible jurisdiction have expanded as the "old jurisdictional landmarks have been left behind" there are still limits beyond which no court can go in exercising its power over individual litigants. *Hanson v. Denckla,* 357 U.S. 235, 260, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Due Process Clause will simply not permit a court to "make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." *International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L. Ed. 95 (1945).

The requirement of venue, on the other hand, does not have that same constitutional ingredient. It involves issues which are only reached once a court has concluded that it constitutionally has the power to adjudicate a particular dispute. *See generally* C. Wright, Law of the Federal Courts § 42 (2d Ed. 1970). Moreover, venue is essentially a housekeeping term used to determine how best a judicial system should distribute its business, either throughout a state or throughout the nation. The watchword is efficiency, or at least convenience, for the courts, the parties and witnesses. A pure venue problem does not normally raise basic questions of

individual rights, but only the somewhat more mundane matters of judicial management and the size of caseloads throughout a judicial system.

■■ Thus, deciding the question of venue over corporations, a court may well be able to develop a policy of "piercing the corporate veil" in order to keep complex litigation in one forum. Such a device will at most upset the convenience of those involved in the lawsuit. In the context of personal jurisdiction over individuals, however, far more serious questions are involved. To assert jurisdiction over an individual who has no real contacts with the forum would undercut the concept of due process which is the very foundation of our system of justice.

The plaintiff's final claim is that by having individual defendants served by certified mail under Massachusetts' Long Arm Statute, Mass.Gen.Laws ch. 223A, as was done in this case, the requirements of personal jurisdiction and service over them have been met. According to this theory, Fed.R.Civ.P. 4(d)(7) [16] incorporates by reference the "manner of service" of the state in which a federal court sits. Therefore, service of the individual defendants "by any form of mail addressed to the person to be served and requiring a signed receipt" under Mass.Gen.Laws ch. 223A, § 6(a)(3) is sufficient.

To be sure, Fed.R.Civ.P. 4(d)(7) does allow a plaintiff to use the "manner of service" of the state in which a district court is sitting as an alternative to the normal method of service set down in Fed.R.Civ.P. 4(d)(1) or (3). Moreover, since the 1963 amendments, Rule 4(d) (7) has been interpreted as opening the door to use of a forum state's long-arm statute to serve out-of-state defendants in situations where Fed.R.Civ.P. 4(f) [17] might make such service otherwise invalid. *See, e. g., Marsh v. Kitchen,* 480 F.2d 1270 (2d Cir. 1973); *Parham v. Edwards,* 346 F.Supp. 968 (S.D.Ga. 1972), *aff'd,* 470 F.2d 1000 (5th Cir. 1973).

■ Rule 4(d)(7), however, is silent on the question of amenability to service, or more simply, when a state long-arm statute may be used. *Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir. 1963). *See also Pulson v. American Rolling Mill Co.,* 170 F.2d 193 (1st Cir. 1948). Accordingly, when the rule is being used to apply a state long-arm statute, it must be read together with Rule 4(e),[18] *see* 4 C. Wright and A. Miller, Federal Practice and Procedure § 114 (1969), which does provide standards for service upon a party not an inhabitant of or found within the state. Specifically, the last clause of Rule 4(e) provides that out-of-state "service may be made *under the circumstances and in the manner prescribed in the state statute or rule."* (emphasis supplied). In other words, service under a constitutionally valid long-arm statute

16. Rule 4(d)(7) provides:
Upon a defendant of any class referred to in paragraph . . . (3) [service on corporations] of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

17. Rule 4(f) provides, in part:
Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. . . .

18. The second sentence of Rule 4(e) provides, in part:
Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule.

in a federal court is only possible in the situations where the in-state activities of the defendant would be sufficient to invoke the long-arm statute had defendant been sued in state court. The "manner of service" language in Rule 4(d)(7) and the "circumstances of service" language in Rule 4(e) must both be satisfied. *See, e. g., Marston v. Gant,* 351 F.Supp. 1122 (E.D.Va.1972).

 The Massachusetts long-arm statute sets out five basic types of conduct which would invoke its use against an absent defendant: Transacting business in the state, contracting to supply goods or things within the state, causing tortious injury in the state under certain circumstances, having an interest in, using or possessing personal property in the state or entering into certain types of insurance contracts in the state. The plaintiff has not come forward with a showing that the three individual defendants have engaged in any of these activities within Massachusetts, let alone that their activities in the state are sufficient to pass the test of due process. The Massachusetts long-arm statute, therefore, has no application to this case.

The motion of the individual defendants to dismiss for lack of personal jurisdiction is allowed.

## VI

### TRANSFER

 This court has found that it can properly adjudicate the claims against the two corporate defendants but that, for jurisdictional reasons, it must dismiss the claim against the three individuals. Because of the resulting awkward posture of this case, the court asked the parties for assistance in determining the advisability of transferring this lawsuit to the United States District Court for the Southern District of Texas, Houston Division. In response, both parties expressed some reservations about this course for neither party believed that venue would be proper against Globemaster New England in the transferee district. Moreover, counsel for the plaintiff opposed transfer because a Texas forum would be somewhat inconvenient to its client and witnesses. After carefully reviewing the positions of both parties, as well as the substantive case law in this area, the court nonetheless concludes that a transfer of this case to the Southern District of Texas would be both proper and advisable.

28 U.S.C. § 1404(a) [19] arms district courts with the broad mandate to transfer a civil action "to any other district or division where it might have been brought" when the "convenience of parties and witnesses" or "the interest of justice" require such a course. Although the case law on the question is surprisingly sparse, the language of the statute leaves little doubt that it allows transfer on the court's own motion any time the court determines it is convenient or just for it to do so. 1 Barron & Holtzoff, Federal Practice and Procedure § 86.1, at 40 (Wright ed.). The language of 1404(a) certainly contrasts significantly with the language of 1404(b) which allows transfer between divisions of the same district only "upon motion, consent or stipulation of all parties." And it would be, if nothing else, an anamoly, to forbid transfer on the court's own motion under a statute which is rooted in the judge-made doctrine of *forum non conveniens. See*

19. 28 U.S.C. § 1404 provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

*generally* C. Wright, Law of the Federal Courts, § 4 (1970 ed.).

 The Southern District of Texas, Houston Division, is a forum where this action could originally have been brought. Given the extensive activities of each of the defendants in that location, there would be little difficulty obtaining personal jurisdiction over them there. Moreover, because Globemaster, Inc. and the individual defendants reside in that division within the meaning of 28 U.S.C. § 1400(b), venue would be proper over them as well.

Venue would also be proper over Globemaster New England in that location for two independent reasons. The center of Globemaster New England's activities, including board and stockholder meetings, and much of its participation in the consummation of sales for New England customers is actually its offices in Globemaster's Houston complex. Accordingly, it has a regular and established place of business and in so doing so has committed acts of alleged infringement in that district. Moreover, even if Globemaster New England failed to meet requirements of section 1400 in its own right in Texas, the same procedure which Stanley Works seeks to use in piercing the corporate veil to find venue over Globemaster, Inc. in Massachusetts is equally applicable when the party over whom venue is sought is a foreign subsidiary. As other courts have held in this context, the doctrine works both ways. *Penntube Plastics Company v. Fluorotex, Inc.*, 336 F.Supp. 698, 704 (D.S.C.1971); *Aileen Mills Co., Inc. v. Ojay Mills, Inc.*, 192 F.Supp. 131 (S.D.N.Y.1960). Thus, a finding of proper venue over Globemaster, Inc. in Texas provides proper venue over Globemaster New England at that location as well.

Finally, while the plaintiff's choice of venue should not be lightly disturbed, *see, e. g., Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826 (N.D.Ga.1970), it appears that the balance of convenience tips so strongly in the other direction here that a change in this case is warranted. The lawsuit does, after all, primarily involve the Texas activities of a Texas-based corporation. Houston is where all Globemaster companies have their corporate headquarters. It is there that all the companies have their Board of Directors and stockholder meetings, where the allegedly infringing product was designed and manufactured, where the essential decision-making of the companies takes place, and which serves as the focal point for Globemaster's sales not only to New England but throughout the country.

Of equal, if not greater, significance is the fact that any action pursued in Massachusetts could not include the three individual defendants who oversee the entire Globemaster complex. Were an action to be maintained here, two lawsuits involving the same set of operative facts may well be generated. More ominously, as the Massachusetts action neared its completion, it may become apparent that the three individual defendants would be so indispensible to its outcome that "equity and good conscience" would require that the action against the two corporate defendants be dismissed. Fed.R.Civ.P. 19(b). Under these unique circumstances, it would seem not only wise, but imperative, to provide a forum in which all parties could be joined and from which a resolution of the entire controversy could be assured, efficiently and speedily.

Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction is denied. The motion of defendants Globemaster New England and Globemaster, Inc. to dismiss for improper venue and insufficiency of service is denied. The motion of defendants Bernstein, Klebanoff and Perwein to dismiss for lack of personal jurisdiction is allowed, without prejudice to the right of the plaintiff to join them in an action in an appropriate forum. The action against Globemaster New England and Globemaster, Inc. is trans-

ferred to the United States District Court for the Southern District of Tex- as, Houston Division, pursuant to 28 U.S.C. § 1404(a).[20]

## APPENDIX A

# United States Patent Office

Des. 229,224
Patented Nov. 13, 1973

229,224

CENTER SQUARE

Antoni P. Gutowski, New Britain, and Carl C. Stoutenberg, Avon, Conn., assignors to The Stanley Works, New Britain, Conn.

Filed Dec. 20, 1971, Ser. No. 210,303

Term of patent 14 years

Int. Cl. D10—04

U.S. Cl. D52—6 A

FIG. 1

FIG. 2

FIG. 3

20. In transferring the case, the court leaves pending the motions to dismiss for failure to state a claim on which relief can be granted. *See* note 2 *supra.* The court also expresses no opinion on the question of what state's law is to be applied in determining plaintiff's unfair competition claim.

Des. 229,224

PAGE 2

FIG. 4

FIG. 5

FIG.6 FIG.7

FIG. 1 is a perspective view of a center square showing our new design;

FIG. 2 is a top plan view thereof;

FIG. 3 is a bottom plan view thereof;

FIG. 4 is a front side elevational view of FIG. 2;

FIG. 5 is a front side elevational view of FIG. 3;

FIG. 6 is a left end elevational view of FIG. 2;

FIG. 7 is a right end elevational view of FIG. 2.

We claim:

The ornamental design for a center square, as shown.

References Cited

UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| 2,297,542 | 9/1942 | Durham | 33—96 |
| 934,260 | 9/1909 | Allison | 33—96 |
| 580,910 | 4/1897 | Townsend | 33—96 |

JOEL STEARMAN, Primary Examiner

N. C. HOLTJE, Assistant Examiner