Peter KELLY, Plaintiff,

v.

Stephen S. KELLY;  Susan M. Kelly;
Jeffrey G. Kelly;  Linda Smythe
Kelly, Defendants.

No. 95–CV–971.

United States District Court,
N.D. New York.

Jan. 16, 1996.

Peter Kelly, Sanibel, Florida, Pro Se.

McMillan, Rather, Bennett & Rigano, P.C. (Michael C. Schmidt, of counsel), Melville, New York, for Defendants.

## MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

### I.  INTRODUCTION

Following denial of change of venue and consolidation motions in *Roxanne Kelly v. Jeffrey G. Kelly,* 95–CV–816,[1] 911 F.Supp. 66, and relying on the documents submitted in those motions, this court has determined *sua sponte* to transfer the venue of this case to the Eastern District of New York.[2]

### II.  FACTS

Plaintiff Peter Kelly and defendants Stephen S. and Jeffrey G. Kelly are the sons of the late Harriet Kelly, and are enmeshed in action concerning their mother's financial arrangements with them before her death.  Peter Kelly accuses his brothers and their wives of fraud and exerting undue influence over their mother during her final illness. He claims that he was deprived of his rightful share of her estate under her will through the illegal creation of a subsequent inter vivos trust and transferral of property which benefitted his brothers.  Stephen, Jeffrey, and their wives claim that this was not the case, and what changes Harriet Kelly made in her estate plans, she made on her own accord.

Plaintiff Peter Kelly resides in Florida, while the defendants all live in New York. Jeffrey Kelly and his wife lived in Altamont (Albany County), New York, in the Northern District at the time this case was com-

---

1.  Roxanne Kelly (Peter's wife), accuses Jeffrey Kelly (Peter's brother) of slandering her in a telephone conference call involving the three brothers and their late mother's lawyers.  In the telephone call, Jeffrey stated that Roxanne had forged his mother's signature on legal documents

regarding a loan.  His defense is that this statement is true.

2.  Jeffrey Kelly moved for a change of venue to the Southern District of New York in the event the two cases were consolidated.

menced, but they no longer reside there. Stephen Kelly and his wife live in the Eastern District. Harriet Kelly lived and died in Suffolk County in the Eastern District. The alleged acts of undue influence occurred in the Eastern District. The legal matters in question which occurred subsequent to her will, were all executed in Suffolk County. The majority of her assets in real estate are located there, and her will was processed through probate court there as well.

## III. *DISCUSSION*

■ 28 U.S.C. § 1404(a) allows the district court to transfer a case to "any other district or division where it may have been brought" for the "convenience of parties or witnesses," or "in the interest of justice." The court in *Stanley Works v. Globemaster, Inc.*, 400 F.Supp. 1325, 1338 (1975) noted that "it would be, if nothing else, an anomoly, to forbid transfer on the court's own motion under a statute which is rooted in the judge-made doctrine of forum non conveniens." *Id.* Though courts rarely transfer cases on their own initiative, the statute clearly permits this when the interests of justice would be best served by doing so. *Id., see also Lead Indus. Ass'n v. Occup. S. & H. Admin.*, 610 F.2d 70, 79 n. 17 (2nd Cir.1979).[3]

■ Generally a plaintiff's choice of forum would be granted considerable weight except when a moving party can show that convenience and justice for all parties requires that the litigation be transferred to another forum. *First Fed. Sav. Bank v. Tazzia*, 696 F.Supp. 904, 910 (S.D.N.Y.1988). In making its determination the court must consider the following:

"[T]he convenience of the parties; the convenience of the witnesses; the relative ease of access to the sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious and inexpensive; and the interests of justice."

*Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 56 (quoting *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 759 (S.D.N.Y.1980)).

■ In this situation, the actions giving rise to the case (the alleged undue influence of Stephen and Jeffrey over their mother, and the creation of the alleged trust and deed), all took place at her residence on Long Island, outside the Northern District in which this case has been filed. The majority of the Kelly estate is in Suffolk County, the Eastern District, and her will was probated there. There is no connection with the Northern District in this action whatsoever, except that two of the defendants formerly lived here. Not a single witness or party lives in the Northern District, and not a single event giving rise to this action occurred there. Keeping this case in the Northern District serves only the ease of the plaintiffs in prosecuting both of their unrelated cases in the same forum, thus allowing them the convenience, comfort, and conviviality of staying with friends while doing so. These concerns do not outweigh the tremendous inconvenience and cost to every other witness and party in this case, particularly the crucial nonparty witnesses who reside on Long Island, who are least in a position to afford the costs of travel and who would not share in the benefits of having done so.

A change of venue to the Southern District is similarly unrelated to the events giving rise to the case. While the defendants have persuasively argued that this case does not belong in the Northern District, they have

---

**3.** The rare cases in which sua sponte changes of venue were overturned on appeal involve decisions made for reasons of administrative efficiency. The Washington D.C. District Court was apparently being swamped by Freedom of Information Act requests from pro se prisoner litigants. Congress had designated the District of Columbia an all-purpose forum in FOIA cases. To ease the burden, they were transferring such cases, sua sponte, to the districts in which the prisoners were incarcerated. The Court of Appeals held that "[t]his rational is unacceptable. The law is well established that a federal court may not order transfer under section 1404(a) merely to serve its personal convenience." *In re Scott*, 709 F.2d 717, 721 (1983). The court held that the action "should be reserved for exceptional circumstances." *Id.* at 719, citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980), *see* also, *In re Chatman–Bey*, 718 F.2d 484, 487 (1983).

not given any coherent reason why the Southern District would be any better, other than the ease of the attorney-witnesses. Although the attorneys who made Mrs. Kelly's will are in New York City, the events in question all took place elsewhere and subsequent to the making of that will.

The interests of justice are best served with the transfer of this case to the one forum neither party has requested, the most obvious forum in which this case could have been brought. The Eastern District is the logical place to litigate this case since all of the events in question occurred there, the deceased lived there, the property in dispute is there, some of the defendants live there, and most of the nonparty witnesses live there as well. This court is unpersuaded by either the plaintiff's or the defendants' feeble arguments to lodge this litigation in some unrelated venue.

## IV. CONCLUSION

Accordingly, it is

ORDERED that

1. The venue of this case be transferred to the Eastern District of New York *sua sponte;* and

2. Pursuant to L.R. 83.6, the Clerk shall upon the expiration of ten (10) days, mail to the Clerk for the Eastern District of New York: a certified copy of this Order and of the docket entries in this case; and the originals of all papers on file in this action with the exception of the instant Order.

IT IS SO ORDERED.