## MERSINE HENNESSEY & another[1] *vs.* THE STOP & SHOP SUPERMARKET COMPANY.

No. 04-P-1005.

Essex. June 3, 2005. - November 9, 2005.

Present: ARMSTRONG, C.J., LENK, & TRAINOR, JJ.

*Practice, Civil,* Amendment, Parties, Service of process. *Rules of Civil Procedure. Negligence,* Grocery store.

A defendant in a civil action could be brought in by the plaintiffs' amendment of the complaint without service of process, where the amendment functioned not to bring in a new party before the court, but merely to correct a misnomer. [90-93]

Summary judgment in favor of the defendant in a slip and fall negligence action was not warranted where the record was insufficient for this court to conclude that no rational view of the evidence would permit a finding of negligence. [93-95]

CIVIL ACTION commenced in the Superior Court Department on July 15, 2002.

Motions to dismiss and for summary judgment were heard by *David A. Lowy,* J.

*Bruce N. Sachar* for the plaintiffs.

*Robert P. McHale* for the defendants.

ARMSTRONG, C.J. The plaintiffs appeal from a judgment dismissing their suit against The Stop & Shop Supermarket Company for insufficiency of service and granting The Stop & Shop Supermarket Company's motion for summary judgment.

On July 28, 2000, Mersine Hennessey (Hennessey) slipped and fell on a piece of a banana in the produce department of a Stop & Shop supermarket located at the Swampscott Mall (Swampscott Stop & Shop). Hennessey testified at deposition that the banana piece was peeled, four to five inches long, and

---

[1]William Hennessey.

golden brown to brown in color. The banana showed no dirt but had been flattened, partially by Hennessey's own sneaker, and partially by another patron or a shopping cart.

On July 15, 2002, Hennessey filed a tort action against "The Stop & Shop Companies, Inc., D/B/A Super Stop & Shop" (Stop & Shop, Inc.). The complaint alleged that the defendant owned and controlled the Swampscott Stop & Shop and had a "usual place of business at Swampscott Mall, Swampscott, Essex County, Massachusetts." An Essex County deputy sheriff timely served the complaint on Donna Dahlgren, "person in charge at the time of service for The Stop & Shop Co., Inc. dba Super Stop [sic], Swampscott Mall, Swampscott, MA." The answer of Stop & Shop, Inc., dated August 5, 2002, denied each of the allegations in the complaint, including ownership and control of the Swampscott Stop & Shop.

During discovery, Stop & Shop, Inc., informed the plaintiffs that The Stop & Shop Supermarket Company (Supermarket Co.) was the operator of the Swampscott Stop & Shop, and therefore the appropriate defendant.[2] On September 19, 2003, the plaintiffs filed an assented-to motion to amend their complaint to "substitute a proposed new Defendant, [Supermarket Co.], for the Defendant initially named in the Complaint." The plaintiffs attached a copy of the amended complaint to the motion, which was docketed, but did not serve the amended complaint on Supermarket Co. Supermarket Co.'s answer to the amended complaint included the affirmative defenses of "failing to give the defendant notice as required by law" and "insufficiency and/or untimely service of process." Supermarket Co. answered some of the plaintiffs' new discovery, propounded after the amended complaint was filed.

On December 24, 2003, Supermarket Co. filed a motion for summary judgment arguing that the plaintiffs could put forth no evidence to show how long the banana had been on the floor.

[2]Neither party offered any evidence to show the Stop & Shop corporate structure and distribution of responsibilities or the operator of the Swampscott Stop & Shop. Contrast, e.g., Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 884 (8th Cir. 1996) (in case involving service under Federal rules, parties submitted affidavit and chart detailing corporate structure, affidavits describing results of telephone inquiries, and State of Kansas corporate annual reports).

On February 4, 2004, Supermarket Co. filed a motion to dismiss pursuant to Mass.R.Civ.P. 4(j), as appearing in 402 Mass. 1401 (1988). Rule 4(j) requires a plaintiff to serve a summons and complaint upon a defendant within ninety days of filing the complaint in Superior Court. Supermarket Co.'s motion to dismiss came more than 130 days after the plaintiffs' motion to amend their complaint was allowed. A Superior Court judge concluded that the plaintiffs' service upon Stop & Shop, Inc., was ineffective against Supermarket Co. and granted the motion. Even if the plaintiffs had properly served Supermarket Co., the judge continued, they failed to produce any evidence that Supermarket Co. violated a duty owed to them. Therefore, the judge concluded, it was equally appropriate to grant Supermarket Co.'s motion for summary judgment.

1. *Insufficiency of service.* Resolution of whether rule 4(j) required the plaintiffs to effect service upon Supermarket Co. after amending the complaint hinges on the distinction between an amendment that adds or substitutes a new defendant to a proceeding, and one that changes the designation of an existing defendant. "A new party not previously served with process in an action may not be brought in by amendment without service of process or a voluntary appearance." *Bateman* v. *Wood,* 297 Mass. 483, 486 (1937). See *Holmquist* v. *Starr,* 402 Mass. 92, 95 (1988). In contrast, "[i]f a new party is not brought before the Court but merely the misnomer is corrected, a new summons is not necessary." *Bowles* v. *Marx Hide & Tallow Co.,* 4 F.R.D. 297, 298 (W.D. Ky. 1945). See *United States* v. *Davis,* 261 F.3d 1, 33 n.25 (1st Cir. 2001) (misnomer does not invalidate service of process); *In re Pharmaceutical Industrial Average Wholesale Price Litigation,* 307 F. Supp. 2d 190, 196 (D. Mass. 2004) (same).

Federal courts apply the so-called "misnomer rule" when a plaintiff has actually sued and served the correct defendant, but mistakenly used the wrong name of that defendant. *People of the Living God* v. *Star Towing Co.,* 289 F. Supp. 635, 641 (E.D. La. 1968). Two factors distinguish misnomer cases: first, the complaint clearly indicates the intended defendant; and second, the plaintiff effectuates service upon the intended defendant or

his agent. In *Godfrey* v. *Eastern Gas & Fuel Assocs.*, 71 F. Supp. 175, 176 (D. Mass. 1947), for example, the plaintiff sued and served the dissolving corporation that had formerly owned a vessel, rather than the successor corporation that owned the vessel at the time of the suit. The plaintiff's complaint, the court noted, "described [the] owner [of the vessel] in such a manner as would make it as reasonable to conclude that he meant to sue . . . whichever was the owner." *Id.* at 177. In addition, the two corporations had the same address, telephone number, agent for service, and legal counsel. *Ibid.* Under these circumstances, the court concluded, to dismiss the case "would be unfair to the plaintiff and would allow the defendant to avoid its rightful obligation through a technical error on the part of plaintiff's counsel, in a situation where it has had notice of the plaintiff's claim from the outset." *Id.* at 178. In *Bowles* v. *Marx Hide & Tallow Co.*, 4 F.R.D. at 299, the plaintiff's complaint identified the defendant, a partnership, as a corporation doing business in Louisville, Kentucky. The summons was served on one of the defendant's partners, and no other Louisville business used the name "Marx Hide & Tallow." *Ibid.* The service was deemed sufficient. *Ibid.* See *United States* v. *A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) (service sufficient where no similarly named companies did business in area, one of company's officers was served, and company's legal counsel appeared to defend suit). For additional examples of Federal application of the misnomer rule, see *Roberts* v. *Michaels*, 219 F.3d 775, 779 (8th Cir. 2000), and cases cited.

Massachusetts courts similarly define misnomer, see *Connelly* v. *Dionne Trucking, Inc.*, 236 Mass. 460, 462-463 (1920), and similarly refuse to allow defendants to escape their obligations based on misnomer. "[I]t would be of the worst consequence, if defendants should be permitted, instead of pleading in abatement, to lie by and increase expenses, and then move to set aside the proceedings." *Langmaid* v. *Puffer*, 7 Gray 378, 380 (1856). In *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.*, 344 Mass. 420, 424 (1962), it became apparent during trial that the correct defendant was the parent corporation "John Bean Division of Food Machinery and Chemical Corporation," not "John Bean Company, Inc.," the subsidiary the plaintiffs

had sued. The plaintiffs amended the complaint without penalty. *Ibid.* "The effect of the amendment," the court observed, "was to substitute the correct name of the corporation originally intended to be sued and served for the incorrect name. The amendment, therefore, was inconsequential. The substituted defendant was in fact before the court from the outset and through counsel fully participated in the trial of these actions." *Ibid.* See *Langmaid* v. *Puffer*, 7 Gray at 381; *Robinson* v. *Trustees of N.Y., N.H. & H.R.R.*, 318 Mass. 121, 123-124 (1945); and *Labor* v. *Sun Hill Indus.*, 48 Mass. App. Ct. 369, 371 (1999), for similar cases.

Defenses predicated on misnomer have been equally unsuccessful in other contexts. See *Bullard* v. *President, Directors & Co. of the Nantucket Bank*, 5 Mass. 99, 99-100 (1809) (laches); *Sherman* v. *Proprietors of Conn. River Bridge*, 11 Mass. 338, 338-339 (1814) (same); *Duff* v. *Zonis*, 327 Mass. 347, 351 (1951) (statute of limitations); *Application of a Grand Jury of N.Y.*, 8 Mass. App. Ct. 760, 768 (1979) (subpoena).

We conclude that the plaintiffs sued and served the correct defendant, the operator of the Swampscott Stop & Shop, doing business as Super Stop & Shop, with a "usual place of business at Swampscott Mall, Swampscott, Essex County, Massachusetts." See *People of the Living God* v. *Star Towing Co.*, 289 F. Supp. at 641. Their complaint identified the intended defendant in "a manner as would make it . . . reasonable to conclude that [they] meant to sue . . . whichever was the owner." *Godfrey* v. *Eastern Gas & Fuel Assocs.*, 71 F. Supp. at 177. The record indicates that a deputy sheriff served the complaint on the "person in charge at the time of service for The Stop & Shop Co., Inc. dba Super Stop [*sic*], Swampscott Mall, Swampscott, MA." Given the paucity of the record (see note 2, *supra*) and the deputy sheriff's return of service, it has not been made to appear that the plaintiffs failed to effect service upon the operator of the Swampscott Stop & Shop. See *id.* See also *Bowles* v. *Marx Hide & Tallow*, 4 F.R.D. at 299. The burden was on the defendant to show that the person served was not a proper agent for service of process. *Stanley Works* v. *Globemaster, Inc.*, 400 F. Supp. 1325, 1334-1335 & n.14 (D. Mass. 1975). The original and amended defendants are represented by the same legal counsel and director of risk manage-

ment and have participated fully in pretrial proceedings. See *Godfrey* v. *Eastern Gas & Fuel Assocs.*, 71 F. Supp. at 177. Despite the plaintiffs' inartful references to "a new Defendant" in their motion to amend the complaint, this case is governed by the misnomer rule. See *Bowles* v. *Marx Hide & Tallow*, 4 F.R.D. at 299.[3]

2. *Summary judgment.* Where a business visitor sustains injuries after slipping on a substance, she may prove the defendant's negligence either by proving that the defendant or his servant had actual knowledge of the existence of the substance, or by showing that the substance was present on the floor for a length of time such that the defendant or his servant should have known about it. *Oliveri* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 165, 167 (1973). Under the latter theory, the time allowed to a defendant to discover a substance depends on the "opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the condition in question, and, in general, the likelihood that they would become aware of the condition in the normal performance of their duties." *Ibid.*, quoting from *Deagle* v. *Great Atl. & Pac. Tea Co.*, 343 Mass. 263, 265 (1961).

Evidence of dirt, trampling, and decay is indicative of the amount of time an organic substance has been on the floor. See *Oliveri* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. at 168-169, and cases cited. The time element is usually not dispositive, but, alongside factors such as the physical proximity of employees, helps to assess the "opportunity for discovery open to the defendant's employees." See *id.* at 167-168, quoting from *Deagle* v. *Great Atl. & Pac. Tea Co.*, *supra.* "Hence, while melting ice cream alone does not warrant an inference that enough time has passed, where the melting ice cream is near an exit door and several of the defendant's employees work near the door, an inference of negligence is warranted." *Id.* at 167

---

[3]See also *United States* v. *A.H. Fischer Lumber Co.*, 162 F.2d at 873 ("A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose . . .").

(citation omitted). Additional examples of the interplay between physical condition and an employer's opportunity for discovery include *Anjou* v. *Boston Elev. Ry.*, 208 Mass. 273, 273-274 (1911) (upholding plaintiff's verdict when evidence suggested that banana peel was dirty, gritty, trampled, and black, and that employees' duties included observing and removing unsafe objects on platform); *Renzi* v. *Boston Elev. Ry.*, 293 Mass. 228, 230-231 (1936) (judgment for defendant where plaintiff introduced evidence that defendant's porters were required to keep stairways and platforms clean, but failed to show that fruit's condition could not have occurred within relatively short amount of time of plaintiff's accident); and *Kelleher* v. *Dini's, Inc.*, 331 Mass. 217, 218-219 (1954) (judgment for defendant where there was no evidence that dirty, trampled carrot was in area where defendant's employees had reason to be).

"Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact. However, a judge may decide the issue as matter of law when no rational view of the evidence permits a finding of negligence." *Goulart* v. *Canton Hous. Authy.*, 57 Mass. App. Ct. 440, 441 (2003). As in the *Kelleher* case, Hennessey's observations of the banana's physical condition are insufficient, alone, to warrant a finding that the banana was on the ground for a sufficient amount of time for Swampscott Stop & Shop employees to have noticed it and picked it up from the floor. See *Kelleher* v. *Dini's, Inc.*, 331 Mass. at 218-219; *Kanter* v. *Massachusetts Wholesale Food Terminal, Inc.*, 340 Mass. 339, 340-341 (1960); *Caro* v. *F. W. Woolworth Co.*, 342 Mass. 155, 156-157 (1961). However, discovery in this case was incomplete. Although Supermarket Co. generally described the store's maintenance policy, it did not provide information about factors such as the proximity of employee workstations to the accident area.[4] As further discovery may yield additional evidence of the defendant's opportunity to

---

[4]The following response was typical: *Interrogatory 8*: "State whether any employee of the Defendant was in the vicinity of the Plaintiff at the time of the alleged accident; and, if so, state where said employee was and what he or she was doing material thereto." *Answer 8*: "The defendant objects to this interrogatory on the grounds that it [is] ambiguous and vague, and seeks

discover the banana, we cannot yet say no rational view of the evidence would permit a finding of negligence. See *Goulart* v. *Canton Hous. Authy.*, 57 Mass. App. Ct. at 441.

Reversal of summary judgment reconciles this case with similar cases that were decided at the directed verdict stage, when the judge had the benefit of evaluating the plaintiff's entire case. See, e.g., *Goddard* v. *Boston & Me. R.R.*, 179 Mass. 52, 52 (1901); *Newell* v. *Wm. Filene's Sons Co.*, 296 Mass. 489, 490 (1937); *Wyman* v. *McLellan Stores Co.*, 315 Mass. 117, 118 (1943), in addition to the cases previously cited. We reverse the judgment of the Superior Court dismissing the plaintiffs' complaint and remand for further proceedings consistent with this opinion.

*So ordered.*

---

information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."